**Ronald GONYEA, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**No. 2:92–CV–235.**

United States District Court, D. Vermont.

Jan. 4, 1993.

---

Keith J. Kasper, McNamara, Fitzpatrick, McCormick & Mertz, Burlington, VT, for plaintiff.

Richard H. Wadhams, Jr., Pierson, Wadhams, Quinn & Yates, Burlington, VT, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

Plaintiff Ronald Gonyea has filed a five count declaratory judgment action seeking relief from the denial of disability benefits by defendant John Hancock Mutual Life Insurance Company. Plaintiff has moved for summary judgment on Count II, which alleges that defendant waived its defense that plaintiff is not eligible for disability benefits.

### I. *Factual Background*

Plaintiff was employed by defendant from 1968 until October 8, 1991, at which time plaintiff was employed as a staff manager in defendant's Burlington, Vermont office. As a benefit of his employment with defendant, plaintiff received disability insurance as part of a Group Disability Insurance Policy ("GDP") issued by defendant.[1] Issued as part of an employee wel-

---

**1.** The GDP provides in part

SALARY CONTINUANCE PLAN FOR EMPLOYEES:
If you become disabled by injury, sickness or pregnancy, the Company will provide a program of Salary Continuance Benefits.

CONTINUOUS PERIOD OF DISABILITY:
Disability for purposes of this plan shall mean disability to the extent that you are able to perform none of the usual and customary duties of your occupation.
LONG TERM DISABILITY INSURANCE FOR EMPLOYEES:
The Company will begin to pay benefits upon receipt of due proof at its Home Office that

fare benefit plan, the GDP is governed by the requirements and standards of the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461. ("ERISA") Plaintiff also held a life insurance policy issued by defendant. That policy was not part of plaintiff's employment benefits package but was identical to the type of insurance policy available to the public at large and thus not subject to the strictures of ERISA.

Plaintiff left his employment claiming that he was disabled from working as that term was defined under the GDP.[2] Plaintiff received disability benefits from defendant for approximately 8 weeks subsequent to his departure. However, by letter dated January 28, 1992, defendant denied plaintiff's claim for disability benefits under the GDP stating that the "limitations imposed by [plaintiff's] condition did not present functional impairment to a disabling degree." (Paper # 12, Exhibit # 2 in court docket). As allowed under ERISA, plaintiff appealed that decision to defendant's ERISA Appeals Committee.

Subsequent to filing that appeal, plaintiff requested a waiver of life insurance premium payments from defendant due to his disability. Such payments are waived under the life insurance policy if plaintiff is disabled as defined in the policy.[3]

By letter dated May 27, 1992 Karen Steeves, a Disability Analyst for the Life Insurance division of defendant informed plaintiff's counsel that plaintiff's request for waiver of premium payments had been

approved and would be effective from November 1991. (Paper # 9, Exhibit D in court's docket).

Thereafter, by letter dated July 6, 1992, Loretta F. Janus, a Benefits Analyst for defendant's Human Resources Division notified plaintiff that defendant's denial of disability benefits had been upheld by the ERISA Appeal Committee. Having exhausted administrative remedies, plaintiff brought suit in this court. In the instant action plaintiff claims that, by finding plaintiff disabled within the context of the life insurance policy, defendant has waived the defense that plaintiff is not disabled within the context of the disability insurance policy. Defendant urges that ERISA preempts plaintiff's waiver claim in this case.

## II. *Standard for Summary Judgment*

Summary judgment may be granted the moving party only when it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) There is no genuine issue of material fact where a rational trier, viewing the evidence in the light most favorable to the nonmoving party, could not find in favor of that party. *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) (citations omitted). In ruling on a motion for summary judgment, a court must resolve all ambiguities and inferences from the underlying facts in favor of the non-moving party. *Levin v.*

---

while insured under this coverage: (a) you have become totally disabled due to an injury, disease or pregnancy.

2. The GDP (Paper # 12, exhibit # 1 in court docket) defines disabled as follows:
 Totally disabled means:
 (1) In order to determine when you start a continuous period of disability, and for the first 36 months (60 months for Marketing Representatives and Ford Group Office Clerical employees) of such period, only such full incapacity, as determined by the Company, and which is due to a physical or mental impairment which keeps you from doing all the essential duties of your occupation; and
 (2) After the first 36 Month (60 months for Marketing Representatives and Ford Group Office Clerical employees) period and for the

rest of such continuous period of total disability, such full incapacity which is due to a physical or mental impairment, which keeps you from doing every duty of any occupation or employment for which you are qualified by education, training or experience.

3. Plaintiff's life insurance policy defines disabled as:
 The incapacity of the Insured as a result of bodily injury or disease or mental disease (i) To engage for remuneration or profit in any occupation or employment for which he is or becomes qualified by education, training, or experience, if the Insured has attained age 16....
 Paper # 9, Defendant's Response to Plaintiff's Requests to Admit, # 20 in court's docket.

*Analysis & Technology, Inc.,* 960 F.2d 314 (2d Cir.1992).

### III. *Discussion*

#### a. ERISA and Common Law

 ERISA was intended to preempt state common law remedies as they relate to any employee benefit plan. Section 514(a) of ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The Supreme Court has consistently afforded a broad, although not absolute, reading to this preemption provision." *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 (2d Cir.1992) (citations omitted). Addressing the purpose of this preemption provision, the *Smith* court stated that:

> Congress expressly included a broadly worded preemption clause within a comprehensive statutory scheme. Congress devised ERISA's 'deliberately expansive' language to 'establish pension plan regulation as exclusively a federal concern.' By careful design, Congress intended the statute to avert a 'patchwork scheme of [state] regulation' which would necessarily introduce 'considerable inefficiencies in benefit program operation.' Through uniform regulation, Congress sought to abate the potential for employers to reduce benefits or to refrain altogether from adopting plans for fear of being subject to frequent and inconsistent state law challenges by disgruntled participants.

*Id.* at 8–9 (citations omitted). In general then, state statutes and common law which relate to an employee benefit plan are preempted by ERISA.

However, Congress also intended that ERISA's preemption provision would "[i]n appropriate circumstances, [allow] courts [to] develop a federal common law under ERISA." *Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1419 (2d Cir.), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). *See also Massachusetts Mutual Life Insurance, Co. v. Russell,* 473 U.S. 134, 156–157, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan,

J. concurring) (ERISA's legislative history demonstrates that Congress intended federal courts to develop federal common law in fashioning additional appropriate equitable relief); *Nachwalter v. Christie,* 805 F.2d 956, 959 (11th Cir.1986) (federal courts may create a body of federal common law to govern ERISA cases); *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) ("Federal courts possess the authority, however, to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself."); *Teamsters Local 348 Health and Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315 (6th Cir.1984); *Rosen v. Hotel & Rest. Employees and Bartenders Union Local 274,* 637 F.2d 592 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).

 This does not mean that federal courts have unfettered discretion to create federal common law under ERISA. As the *Amato* court stated, "[w]here Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, federal courts will not lightly create additional rights under the rubric of federal common law." *Amato,* 773 F.2d at 1419, citing *Van Orman v. American Insurance Co.,* 680 F.2d 301, 312 (3d Cir.1982). *See also Nachwalter,* 805 F.2d at 959 ("for the federal courts to create a body of federal common law to govern ERISA cases does not ... give a federal court *carte blanch* authority to apply any prevailing state common law doctrine it chooses to ERISA cases.").

Rather, courts have applied a federal common law in ERISA actions only after determining that ERISA's regulatory framework does not address the issue before them and application of common law will not frustrate the underlying policies of ERISA. *See Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown,* 897 F.2d 275, 281 (7th Cir.1990) (citing *Nachwalter* at 959).

The case law addressing the applicability of common law equitable remedies in ERISA actions most often concerns amend-

ments or modifications of employee benefit plans. Where these alleged amendments or modifications resulted from informal oral communications, courts have *uniformly* rejected attempts under federal common law to raise claims or defenses such as estoppel or waiver. Such claims or defenses are held to be contrary to the specific dictates of ERISA requiring that employee benefit plans and any modifications or amendments to them should be written. *See Shaw v. Delta Airline, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Moore v. Metropolitan Life*, 856 F.2d 488, 492 (2d Cir.1988); *Nachwalter* at 959; *Singer v. Black & Decker Corp.*, 769 F.Supp. 911, 915 (D.Md.1991).

However, in clarifying its decision in *Nachwalter*, the Eleventh Circuit differentiated between oral *amendments* or *modifications* to a plan and oral *interpretations* of an ambiguous provision of a plan. *Kane*, 893 F.2d at 1286. In *Kane* the court held an ERISA plan sponsor must adhere to its representative's oral interpretations of the plan in an equitable estoppel action, reasoning that requiring the ERISA plan sponsor to do so would not effect the goal of ERISA to enable employees and beneficiaries to rely on the written terms of benefit plans. *Id.* In a subsequent case, *National Companies Health Plan v. St. Joseph's Hospital*, 929 F.2d 1558, 1572 (11th Cir. 1991), that circuit extended its holding in *Kane* to apply to written interpretations of an employee benefits plan because, "[a]s with oral interpretations, ERISA does not specifically address the issue of informal written interpretations of a plan, and use of the law of equitable estoppel to enforce informal written interpretations will not undermine the integrity of ERISA plans."

Second Circuit opinion appears aligned with this distinction between amendments or modifications to employee benefit plans and interpretations of those plans and the use of common law remedies in relation to them. In reviewing a district court's decision to reject the use of a waiver defense

based on state contract law in an ERISA action, the Second Circuit stated:

> We do not understand the District Court's opinion, in rejecting GCI's waiver defense, to say that section 1104(a)(1)(D) displaces all of state contract law with respect to interpreting ERISA plan documents, but only that where such documents are clear, state law defenses are invalid when they would frustrate important policies underlying a statutory scheme as broadly preemptive as ERISA.

*Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1241 (2d Cir.1989). *Dardaganis* clearly suggests that where ERISA documents are ambiguous or "not clear," state law may be invoked as long as it does not serve to frustrate the policies underlying ERISA.

The reasoning of *Dardaganis, Kane* and *National Companies* is aptly applied in the present matter. ERISA does not specifically address the issue presently before the Court and use of the federal common law of waiver here will not undermine the underlying purpose of ERISA. Plaintiff does not seek to change the terms controlling the GDP but rather to hold defendant bound to its interpretation of a term under the life insurance policy which is common to the GDP. That the definition of the term is not clear is evidenced by the different conclusions reached by defendant's employees as to plaintiff's status under similar definitions.[4] Under these circumstances, the Court finds that in this action the common law of waiver is not subject to the general preemption provision of ERISA and is a valid ground for responding to defendant's denial of disability benefits.

**b. Federal Common Law of Waiver**

 Although there is no specific authority identifying a federal common law of waiver in ERISA actions, 29 U.S.C. § 1132(a)(1)(B) was intended to create a federal common law for employee benefit plans which would augment the rights cre-

---

**4.** In fact, plaintiff asserts that the definition of "disability" under the life insurance policy is more exacting than the one under the GDP. Regardless, the different conclusions as to plaintiff's eligibility for disability status under the two standards highlights the ambiguous nature of the definition and its application.

ated by ERISA's substantive provisions. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 973 (5th Cir.1981). In fashioning the Federal common law to apply in ERISA actions, courts look to the statute itself for guidance. *Fox Valley & Vic. Const. Wkrs. Pension F. v. Brown,* 897 F.2d 275, 281 (7th Cir.1990); *In re White Farm Equip. Co.,* 788 F.2d 1186, 1191–93 (6th Cir.1986). Courts may also look to state law as a source for federal law as long as such state law is consistent with the policies underlying the federal statute at issue and any distinct federal common law. *See Amato,* 773 F.2d at 1419 citing *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *Matter of Heci Exploration Co., Inc.,* 862 F.2d 513 (5th Cir. 1988). Under either federal or Vermont law, waiver is the intentional relinquishment of a known right or privilege. *See Matter of Heci,* 862 F.2d at 523; *Swint v. Protective Life Ins. Co.,* 779 F.Supp. 532 (S.D.Ala.1991). As defined by the Vermont Supreme Court:

> A "waiver" is the intentional relinquishment or abandonment of a known right, and the act of waiver may be evidenced by express words as well as by conduct. Unlike an estoppel, it involves the act or conduct of one party to the contract only, and involves both knowledge and intent on the part of the waiving party. *See, Beatty v. Employer's Liability Assurance Corp.,* 106 Vt. 25 [168 A. 919] (1933); *Trudeau v. Lussier,* 123 Vt. 358 [189 A.2d 529] (1963). A waiver does not necessarily imply that one has been misled to its prejudice or into an altered position.

*Lynda Lee Fashions, Inc. v. Sharpe Off. Print Inc.,* 134 Vt. 167, 170, 352 A.2d 676 (1976). With this standard in mind, I turn to whether or not a "genuine material issue of fact" exists.

c. Facts

■ It is undisputed that defendant found plaintiff disabled for purposes of waiving his life insurance premium payments. It is also undisputed that on two separate occasions, the first prior to plain-tiff's request for waiver and the second afterwards, defendant found plaintiff insufficiently disabled to qualify for disability benefits under the GDP. However, it is far from undisputed that the conclusions reached by one branch of defendant's corporation serve to knowingly and intentionally waive the ability of other branches to make contrary conclusions. The GDP and the life insurance policies are distinct in a number of ways—they address different contingencies, apply different definitions to the terms within them and appear to be administered by two distinct divisions within defendant's corporate structure—and it is not at all clear that a decision under one policy binds the defendant's decision making under another policy, which is essentially what plaintiff is arguing. Elucidation as to the internal procedures in processing such claims, the relationship between the individual branches involved here and whether defendant's employees knew of the two separate claims alleging disabled status is necessary in order to establish whether there was a "knowing and intentional" relinquishment of rights.

Plaintiff's claim may have merit but it involves facts and assumptions which are subject to dispute and is therefore not properly resolved on a motion for summary judgment.

## CONCLUSION

For the reasons set forth above, plaintiff's Motion for Summary Judgment (Paper # 8 in court docket) is DENIED.