Reginald JAMES, Plaintiff,

v.

**NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS' BENEFITS FUNDS, Frederick W. Devine, Thomas Nastasi, Jr., John R. Abbatemarco, Robert J. Cavanaugh, Charles Tergensen, Jr., Paul J. O'Brien, John A. Brunetti and Alvin M. Jaff, individually, and as Trustees of New York City District Council of Carpenters' Benefits Funds and Union Labor Life Insurance Company, Defendants.**

No. CV93–5252(ADS).

United States District Court,
E.D. New York.

Dec. 13, 1996.

624

Law Offices of Gregory Lisi, Rockville Centre, New York, for Plaintiff.

Chadbourne & Parke L.L.P. (Mark E. Brossman, of counsel) New York City, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This case arises from the claims of the plaintiff, Reginald James (the "plaintiff" or "James"), for the payment of health care benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by the defendants, New York City District Council of Carpenters' Benefits Funds, Frederick W. Devine, Thomas Nastasi, Jr., John R. Abbatemarco, Robert J. Cavanaugh, Charles Tergensen, Jr., Paul J. O'Brien, John A. Brunetti and Alvin M. Jaff in their individual capacities and as trustees for the defendant benefit funds (the "defendants" or the "Funds"). According to the plaintiff, he is entitled to between $584,000 and $700,800 in benefit payments, depending upon which of James' pleadings or motion papers is referenced, plus statutory penalties, as a result of the health care costs he incurred between January 1, 1989 and December 31, 1992.

Presently before the Court are the defendants' motion and the plaintiff's cross motion for summary judgment. The Court notes at the outset that this lawsuit was discontinued against the defendant Union Labor Life Insurance Company by stipulation dated January 18, 1996.

## I. *Background*

The plaintiff, Reginald James, is a resident of Suffolk County and a member of the New York City District Council of Carpenters (the "Union"). As a Union member, James was a participant in Union's benefit plans which are administered by the defendant Funds. The individual defendants serve as the Funds' trustees.

As of October 1, 1984, the Union maintained a welfare plan (the "Plan") providing for hospital and medical benefits to plan participants including the plaintiff. In order to explain the benefits provided, the defendants disseminated a summary plan description (the "SPD") to plan participants which James admits he received. *See* Affidavit of James Patterson, ("Patterson Aff.") Exh. C. The SPD expressly provides however, that it is not a substitute for the official insurance policies issued by the underlying carriers, namely Union Labor Life Insurance Company ("ULLICO") or Blue Cross/Blue Shield, which were available for review by all participants. SPD at 3. The plaintiff contends however, that although he made several attempts to review the Plan itself, his calls were either ignored or he was denied access.

In addition to explaining coverage under the Plan, the SPD sets forth certain limitations. For example, the SPD provides that "Benefits for Covered Services are Available as Follows: ... care rendered without prior hospitalization or through a non-participating Agency [is limited] to a maximum of 40 home care visits per year. In no event will coverage be provided for more than 200 visits in any calendar year." SPD at 19. Further, the SPD states that a participant is "covered" for charges by "a registered graduate nurse for private nursing services," SPD at 22, but excludes "expenses for: ... which [the participant] would not be charged had there been no insurance; ... [and for] which [the participant is] not required to pay." SPD at 23.

Further limitations contained in the SPD provide that:

[i]n general the benefits described in this booklet will not be paid or provided under the following circumstances:

—If the treatment is not recommended or approved by a qualified physician;

—If there is no charge for the services;

\* \* \* \* \* \*

SPD at 13. With respect to the provision of "Home Care," the SPD provides:

Home Care Benefits are available under a physician-approved plan of treatment when the necessary services are rendered through a non-profit New York State Certified Home Health Agency. Benefits will be provided only if hospitalization or confinement in a skilled nursing facility would otherwise have been required.

SPD at 18–19.

Although the SPD does not address the issue, the Plan provides for "private duty nursing service other than a nurse who ordi-

narily resides in the insured Person's home or who is a member of the immediate family." Patterson Aff. Exh. A. Bates # 0032. On April 1, 1987 this provision was modified to expressly include services provided by a licensed practical nurse. *Id.* at 0001. On January 1, 1992, the Plan was again modified to exclude private duty nursing in almost all circumstances, with limited exceptions not applicable here. Pursuant to the terms of the Plan, ULLICO was responsible for adjudicating all benefits claims made by plan participants.

On September 5, 1986, the plaintiff's daughter Latisha R. James ("Latisha") was born. Since her birth, Latisha suffered numerous serious illnesses including meningitis, cardiac and respiratory failure, quadriplegia, and seizure disorder. She died on April 7, 1993 at age six. During her life, Latisha received health care, including administration of medical care from her mother, Christine Bartley James ("Christine"), a licensed practical nurse. Throughout this period, James submitted in excess of $300,000 in related medical claims other than services provided by his wife, all of which were paid by the defendants.

According to James, he was told by defendant John Abbatemarco, the Union vice president and Fund trustee, and James Patterson, former manager of the Welfare Fund from 1991 to 1993 and now Deputy Director of the Fund, that his wife's services were covered by the Plan. James Dep. 268–69.

In May 1993, after his daughter's death, James submitted a claim for payment based upon his wife's services, twelve hours per day, seven days a week for the period of January 1, 1989 through December 31, 1992, a period of four years. On May 27, 1993, this claim was denied. According to the Funds, Christine was not qualified as a home care provider under the Plan because she resided in the insured's home and was a member of the insured's immediate family. The plaintiff appealed this determination to the Fund's appeal committee which sustained the decision to deny benefits on July 14, 1993.

In September 1993, James submitted a second claim seeking payment for his wife's medical services for sixteen hours per day, seven days per week during the same four year period. This claim was also denied but James did not appeal.

On November 19, 1993, the plaintiff, then represented by counsel, filed his Complaint in this Court alleging multiple causes of action pursuant to ERISA, 29 U.S.C. §§ 1001 *et seq.* Subsequently, on March 6, 1995 the plaintiff, then appearing pro se, filed an Amended Complaint. This revised pleading condensed the previously separated allegations into a single multifaceted claim. However, because the Court does not wish to hold James hostage to his lack of legal expertise, the Amended Complaint will be given a broad reading to allege the following causes of action: (1) failure to pay benefits as provided for under the welfare plan in violation of 29 U.S.C. §§ 186 and 1132; (2) breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104(a)(1) and 1106(b); and (3) failure to disclose required plan information pursuant to 29 U.S.C. § 1022.

The defendants move for summary judgment in their favor pursuant to Fed.R.Civ.P. 56 dismissing the Amended Complaint arguing that under the relevant terms of the Plan and SPD, James was not entitled to any benefits. The plaintiff, represented by new counsel, opposes the motion arguing that he has sufficiently established his claims and cross moves for summary judgment in his favor contending that the defendants are liable for monetary damages because:

the Fund, by its operators, administrators and trustees:

i    distributed an incomplete and/or inaccurate ... SPD,

ii    misrepresented material information regarding plaintiff's entitlement to nursing benefits under the employee welfare benefit plan; or in the alternative,

iii    failed to properly advise the plaintiff as to his status and options under the employee welfare benefit plan,

iv    failed to disclose documents to which the plaintiff was legally entitled,

v    failed to give the plaintiff's claims a fair and proper review,

vi    failed to give the plaintiff's claims a fair and proper appeal,

vii   and otherwise failed to adhere to the legal obligations and duties owed a participant.

Def. Mem. of Law in support of cross motion at 1.

## II.  *Discussion*

### A.  *The standard for summary judgment*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City*, 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v.*

*KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### B.  *The defendants' motion*

#### 1.  *Standard of review of denial of benefits*

■   At the outset, the Court determines the appropriate standard of review. According to the seminal case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1988), the district court will review the acts of a plan administrator *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57 *see also O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 111–12 (2d Cir.1995).

Applying this standard in this case, the Court will review the decision of the plan administrator *de novo*. According to the section of the SPD entitled "Decision on Review":

> Decision on the review [of a claim] will be made by the insuring organization on any question involving the terms of an insurance contract and by the Board of Trustees on any other question. If the request for review involves a claim for benefits that are provided directly by the Fund on a self-insured basis, the Board of Trustees shall make a decision at its next regularly scheduled meeting. However, if the request is received less than 30 days before a meeting, the decision may be made at the second meeting following receipt of the request. If special circumstances require an extension of time for processing, a decision may be made at the third meeting following the date the request for a review is made. The decision of the Board of

Trustees shall be in writing and shall include the specific reason(s) for the decision and specific references to plan provisions on which the decision is based. If you request of a review of a denied claim you will be notified of the approximate date you can expect to receive a decision.

SPD at 51–52. The above language does not speak to the discretion of the plan administrator or fiduciary and is therefore insufficient to warrant a deferential standard of review. *Cf. Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (applying the deferential standard of review where the plan provided that the administrating body would "conclusively" determine questions arising under the plan and that such determinations were not subject to review). Further, although the copy of the Plan filed with the Court is of poor quality and therefore difficult to read, *see* Patterson Aff. Exh. A, given what was legible, the Court was unable to find any other language addressing this subject. Accordingly, the Court will apply a *de novo* standard of review to the decision to deny the plaintiff's claim for benefits.

### 2. *The applicable terms of the Plan*

■ The primary method by which an employer communicates to its employees with respect to an ERISA welfare plan is through a summary plan description, *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988), which "must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries" with respect to a plan's provisions. 29 C.F.R. § 2520.102(b). As the Second Circuit recognized in *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990):

ERISA and the regulations promulgated under it require that employees be given [summary plan descriptions]. *See* 29 U.S.C. § 1022 (1988) (company must furnish its employees with summary forms of benefit plans describing *inter alia*, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits"); 29 C.F.R. 2520.102–2(a) (1989) (summary description "shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan"). Thus, the

statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary. To allow the Plan to contain different terms that supersede the terms of the [summary] would defeat the purpose of providing the employees with summaries. . . .

\* \* \* \* \* \*

[Accordingly, w]e conclude that the district court properly held that where, as here, the terms of a plan and those of a plan summary conflict, it is the plan summary that controls.

*Id.* at 907–08. Consistent with this rule, courts have recognized that where "the SPD does not contain a benefit forfeiture clause, then such a forfeiture [contained in the underlying plan] will not be enforced against a participant. *Jensen v. SIPCO, Inc.*, 867 F.Supp. 1384, 1391 (N.D.Iowa 1993), *aff'd*, 38 F.3d 945 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995), citing, *Hillis v. Waukesha Title Co.*, 576 F.Supp. 1103, 1109 (E.D.Wis.1983); *Eardman v. Bethlehem Steel Corp.*, 607 F.Supp. 196, 209–214 (W.D.N.Y.1984).

The defendants argue that the plaintiff's claims are untenable under several plan provisions: (a) precluding payment for services rendered by private duty nurse, such as Christine James, who resides with the insured or who is a member of the insured's family (b) requiring that home care be covered only when approved under a physician directed plan; (c) requiring that the physician directed home care be provided by a registered nurse; and (d) precluding payment for those charges made for supplies, services or treatment which the insured would not have been charged for in the absence of insurance or which the insured is "not required to pay."

#### a. *Private duty nurse who resides with the insured or is a member of the insured's family*

■ Initially, the defendants argue that James' claims must fail because the benefits he seeks are based on private duty nursing

services rendered by his wife Christine, who resides with him. As stated above, the Plan provides for "necessary medical care and services which are ordered by a legally qualified physician" including "private duty nursing service [provided by someone] other than a nurse who ordinarily resides in the insured Person's home or who is a member of the immediate family." Patterson Aff. Exh. A. Ordinarily, this language alone would be sufficient to disqualify any claim for payment made by James based on his wife's services because of her relationship with her husband.

However, the plaintiff responds, and the Court agrees that there is a question of material fact as to whether the plaintiff is bound by these terms. According to James, he was denied access to the Plan every time he sought to review it. Further, although the plaintiff had a copy of the SPD, that document did not contain any similar limiting language. As a result, the plaintiff could not have known of this exclusion. Accordingly, the Court will not enforce this forfeiture clause against him at this time. *See Jensen,* 867 F.Supp. at 1391 (citing cases).

In reaching this conclusion, the Court is mindful of the defendants' argument that this Plan family member/cohabitor limitation is merely an elaboration on the Plan exclusion, which is repeated in the SPD, regarding services for which the claimant would not have been charged in the absence of insurance or was not required to pay. While the Court believes that both requirements stem from an underlying policy to avoid entanglements in transactions occurring at less than arms length, the two provisions are not synonymous. Indeed, the Court could imagine situations in which family members do pay each other for medical services, regardless of insurance coverage. Accordingly, the Court finds that there is a question of material fact regarding this issue rendering summary judgment inappropriate with regard to all parties.

b. *Coverage under a physician approved plan for services provided by a registered nurse*

■ The next two arguments which the defendants contend require granting summary judgment in their favor are that the services rendered by James' wife were not performed by a registered nurse pursuant to a physician approved plan. Under the section of the SPD entitled "What Expenses are Covered," which James concedes he received and read, benefits will be paid "for reasonable and customary expenses ordered by a legally qualified physician. These are charges: ... d. made by a registered graduate nurse for private nursing services." SPD at 22.

Again, the Court recognizes that this language on its face would appear to preclude coverage for services rendered by Christine in taking care of Latisha. However, a more intense analysis belies this conclusion. Taking the evidence set forth by the plaintiff in the light most favorable to him, the Court recognizes that Latisha's physicians approved orders for life sustaining equipment including intravenous medication, syringes and oxygen. According to the deposition testimony of Endira Kalessar, who was employed by ULLICO as a claims examiner during the relevant time period, and was involved in denying James' claim, provision of these types of equipment and services require a physician's or other health care provider's "letter of medical necessity" to direct what medical services are to be provided and by whom. Affidavit of Gregory Lisi, Exh. K. Although the letter is not part of the parties' submissions in support of their respective positions, given the extensive nature of the medical care required by Latisha, the Court finds that the evidence provided is sufficient to create a material issue of fact as to whether the services provided by Christine James were pursuant to a physician approved plan.

Further, the Court finds that Mrs. James' status as a licensed practical nurse, as opposed to a registered nurse, is not dispositive of the plaintiff's claims. As the defendants recognize in the supporting affidavit of James Patterson, effective April 1, 1987 the Plan was amended so that the "Covered Charges" included "private duty nursing rendered by a Registered Nurse, Licensed Practical Nurse, and Registered Nurses' Aide, other than a nurse who ordinarily resides in the insured Person's home or who is a mem-

ber of the immediate family." Patterson Aff. ¶ 7 & Exh. A. In the Court's view, this language eliminates the restriction against home care services being provided by licensed practical nurses, such as the plaintiff's wife, during the specified period. While the Court recognizes that the April 1, 1987 amendment still precludes payment for services rendered by the insured's family members or those who live in his house, there is still a material issue of fact as to whether this limitation was ever communicated to James despite his requests. Accordingly, the Court is inclined to invoke the rule that limitations on benefits not set forth in the SPD will not be applied against the beneficiary, *see Jensen,* 867 F.Supp. at 1391 (citing cases), and permit the plaintiff to use the portion of this amendment expanding coverage to services rendered by a licensed practical nurse to his advantage while precluding the defendants from applying the language prohibiting payment for services rendered by family members or cohabitors as a defense. However, the Court need not decide this issue for the reasons set forth below.

c. *Payment for those charges which the insured would not have been charged in the absence of insurance or for which the insured is "not required to pay."*

The defendants' final argument is that the Plan is not obligated to pay benefits for Christine's services because James was not required to pay for those services. As set forth above, the SPD does provide under the heading "Limitations," that "[i]n general the benefits described in this booklet will not be paid or provided under the following circumstances: ... [i]f there is no charge for services...." SPD at 13. Further, under the heading "What Expenses are Excluded," the SPD provides that "Covered charges will not include those expenses for: ... which you would not be charged had there been no insurance [or] which you are not required to pay." SPD at 23. Applying these provisions, the defendants argue that they are not obligated to pay benefits for services rendered by Christine because James has produced no evidence that demonstrates that he was required to pay for them. The Court agrees.

A review of the plaintiff's opposition reveals that the home care services provided by James' wife are not covered by the Plan because James was never required to pay those expenses. James' memorandum of law argues that "both Christine and Reginald James' deposition testimony clearly reveals that Christine James was to be compensated for her services as a professional nurse." Def. Mem. of Law at 14. Further, he alleges that he "believed he was required to pay for Christine James' professional services," Resp. to Def. 3(g) statement; that he "incurred substantial indebtedness, including reimbursement to the New York City District Council for a medical loan resulting from the lack of two salaries," Affidavit of Gregory Lisi, July 5, 1996 at n. 3; that he "incurred damages as a result of the lost income," Def. Mem. of Law in support at 19; and that he "informed his wife that she would be paid." *Id.* at 5. Such allegations however, are not tantamount to being "required to pay" for Christine's services.

Black's Law Dictionary defines the word "require" as follows:

To direct, order, demand, instruct, command, claim, compel, request, need, exact. *State ex rel. Frohmiller v. Hendrix,* 59 Ariz. 184, 124 P.2d 768, 773. To be in need of. To ask for authoritatively or imperatively. *State v. Community Distributors, Inc.,* 123 N.J.Super. 589, 304 A.2d 213, 217.

Black's Law Dictionary 1304 (6th ed. 1992). In *Vango Media, Inc. v. City of New York,* 34 F.3d 68, 72–73 (2d Cir.1994), the Second Circuit was confronted with interpreting the phrase "[n]o requirement or prohibition" as applied in the Federal Cigarette Labeling and Advertising Act of 1965, Pub.L. No. 89–92, 79 Stat. 282, as amended by the Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87, codified as amended, 15 U.S.C. §§ 1331–1340. The statute provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labelled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b). In determining whether New York City Administrative Code

§§ 17–616 to 17–626 were preempted by this provision, the Second Circuit held that the Local Law, which mandated a percentage of certain tobacco advertisements "must" provide a public health message conveying the dangers of smoking, constituted a "requirement." *Id.* at 72–73; *see also United States v. Vasquez,* 7 F.3d 81, 84 (5th Cir.1993) (recognizing an evidentiary hearing has been "required" where a Magistrate Judge decides that the hearing is *"needed* to dispose of the case") (emphasis added); *cf. Cowen v. Bank of Texas, FSB,* 70 F.3d 937, 943 (7th Cir. 1995) ("required" should not be interpreted so "loosely" as to found synonymous with "anticipated"); *Allied Princess Bay Co. # 2 v. Atochem N. Amer., Inc.,* 855 F.Supp. 595, 602 (E.D.N.Y.1993) (noting that a "voluntary arrangement" cannot be characterized as a "requirement").

■ Having reviewed these definitions, the Court finds the terms "require" and "requirement" are unambiguous, and as the Second Circuit indicated in *Vango Media,* means "must." Applying this term as it is used in the Plan and the SPD, the Court holds that the plaintiff is not entitled to payment for the alleged costs incurred as a result of his wife's provision of home care to their fatally ill daughter. There is simply no evidence in the record that James "must" have paid for those services.

This determination however, does not end the inquiry. According to the plaintiff, on several occasions he had spoken with James Patterson, then Manager of the Welfare Fund, and John Abbatemarco, then Vice President of the Union and a Plan trustee, who advised him that his wife's services were covered under the Plan. As a result, the Court must determine whether the Plan was orally modified or whether the defendants should be estopped from invoking this exclusion.

3. *Oral modification of the Plan's terms and estoppel*

■ Reading the facts in the light most favorable to the plaintiff, the Court assumes that whatever representations he alleges were made by Patterson and Abbatemarco with regard to services rendered by his wife actually occurred. Accordingly, the issue now confronting the Court is whether such oral modifications are binding on the defendants.

■ Pursuant to 29 U.S.C. § 1102(a)(1), an ERISA plan must be maintained in writing, and as the Second Circuit held in *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492, (2d Cir.1988), "absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." In reaching this conclusion, the court recognized that:

> Congress intended that plan documents and SPDs exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

> \* \* \* \* \* \*

> While th[is] plaintiff[ ] would be helped by a decision in [his] favor, such a ruling would not only fly in the face of ERISA's plain language but would also decrease protection for future employees and retirees.

*Id.* Accordingly, ERISA precludes oral modification of a covered plan's terms. *Id.; see also Snyder v. Elliot W. Dann Co.,* 854 F.Supp. 264, 271 (S.D.N.Y.1994) (collecting cases).

■ Nevertheless, the Second Circuit has recognized that under certain "extraordinary circumstances" the principles of estoppel may apply in the ERISA context. *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993), citing, *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1039 (2d Cir. 1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986); *see also Schonholz v. Long Island Jewish Medical Ctr.,* 87 F.3d 72, 78–80 (2d Cir.1996) (recognizing

claim for promissory estoppel under ERISA); *Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 793–95 (S.D.N.Y.1993) (collecting cases). As a preliminary matter however, the Court notes that the plaintiff raises only an equitable estoppel argument. Therefore, this is the only estoppel doctrine the court will consider.

"The elements of estoppel are (1) material misrepresentation, (2) reliance and (3) damage." *Lee*, 991 F.2d at 1009, citing, *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir.), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991) (recognizing the applicability of estoppel in the ERISA context but finding no material misrepresentation in that instance). However, the nature of the "extraordinary circumstances" necessary to state a claim for equitable estoppel under ERISA are not entirely clear.

Several circuit courts have developed a middle ground, holding that "equitable estoppel principles are applicable under ERISA only where the terms of the plan [at issue] are ambiguous." *Marx v. Loral Corp.*, 87 F.3d 1049, 1056 (10th Cir.1996). Accordingly, such "a cause of action ... [exists] when a plan administrator makes a representation that interprets, rather than modifies, an ambiguous term of the plan." *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1534 (11th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995), citing the seminal case of *Kane v. Aetna Life Ins. Co.*, 893 F.2d 1283, 1285 (11th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *see also Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821–22 (9th Cir.1992) (adopting this rule). Whether this standard is applicable in the Second Circuit has not yet been decided. For example, in *Aquilio v. Police Benevolent Ass'n*, 857 F.Supp. 190, 201–02 & n. 24 (N.D.N.Y.1994), the district court recognized the standard as now set forth by the Ninth, Tenth and Eleventh Circuits but did not adopt this standard in its analysis. Rather, the court applied the elements set forth in *Lee* and denied the defendants' motion for summary judgment.

On the other hand, in *Ludwig*, the district court recognized the existence of a "wrinkle" in the application of the equitable estoppel doctrine under ERISA which permits plaintiffs to rely only upon an oral or written interpretation of ambiguous plan language. *Ludwig*, 838 F.Supp. at 798–99, citing, *Kane*, 893 F.2d at 1285 (recognizing this standard but finding it inapplicable in that case). Further, in a case decided before *Lee*, Judge Parker, then Chief Judge for the District of Vermont, adopted the standard applied in the Ninth, Tenth and Eleventh Circuits, finding it consistent with prior case law in the Second Circuit. *See Gonyea v. John Hancock Mutual Life Ins. Co.*, 812 F.Supp. 445, 449 (D.Vt.1993), citing, *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989).

■ Having reviewed the case law, the Court now expressly incorporates the standard first set forth in *Kane* and subsequently applied in *Marx, Lordmann Enterprises* and *Greany* into the "extraordinary circumstances" test set forth in *Lee*. Thus, the equitable estoppel doctrine is limited in applicability under ERISA to those situations where an oral representation is made with respect to an ambiguous term in a plan or SPD. Otherwise, a mechanical application of the elements set forth in *Lee* might result and the state law doctrine of equitable estoppel could be incorporated wholesale into ERISA, thereby rendering the "extraordinary circumstances" requirement a nullity.

■ Applying this standard, the Court finds that James is unable to maintain his claim under the principles of equitable estoppel. Assuming, as the Court must, that both Abbatemarco and Patterson represented to him orally that he would receive benefits for his wife's services, these representations would directly contradict unambiguous terms of the Plan and the SPD which "require" that the beneficiary would have been charged for the services rendered in the absence of insurance and did indeed pay for those services in order to receive benefits. Because, as previously stated, the Court has determined that these terms are unambiguous, an alleged modification or interpretation of this exclu-

sion will not support a claim for equitable estoppel.

In concluding this analysis however, the Court notes that even if the *Lee* "extraordinary circumstances" test was applied without the incorporation of *Kane* and its progeny, the Court would still grant the defendants' summary judgment motion as to this issue. In the Court's view, applying a reasonable standard, the plaintiff has offered no evidence of anything other than an ordinary, as opposed to extraordinary, claim for equitable estoppel. *See Snyder*, 854 F.Supp. at 273 (granting summary judgment in part based on lack of "extraordinary circumstances"). Accordingly, because the Court has determined that the plaintiff is not entitled to benefits under the terms of the plan, or the SPD, and has failed to state a cause of action for equitable estoppel, the defendants' motion for summary judgment on this claim pursuant to Fed.R.Civ.P. 56 is granted dismissing this claim and the plaintiff's cross motion is denied.

### 4. *Failure to disclose*

▮▮▮ James further contends that he is entitled to payment for his wife's services because of the defendants' failure to comply with ERISA's disclosure requirements with regard to the Plan itself. As set forth above, ERISA requires that plan sponsors furnish participants with summary plan descriptions. *See* 29 U.S.C. § 1024(b)(1). The SPD must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). However, in order to recover benefits for violation of ERISA's disclosure requirements, a plaintiff must demonstrate a "substantive harm" that "sufficiently taint[s]" the denial of benefits to warrant a finding that this decision was "arbitrary and capricious" and should therefore be reversed. *Veilleux v. Atochem N. America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991); *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328–29 (2d Cir.1985), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1354 (9th Cir.1984), *cert. denied*, 474

U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

Applying this standard, the Court finds that James is unable to maintain his claim for violation of ERISA's disclosure requirements. Assuming the veracity of his allegations that he was denied access to the Plan, his claim fails because he is unable to demonstrate the required "substantive harm." As set forth above, under the terms of the SPD, which the plaintiff had received and read, James was not entitled to payment for his wife's services. A review of the Plan does not show that the terms relied upon above, namely the plaintiff's failure to be charged for, or pay for, his wife's services was in any way affected by the terms of the underlying Plan. Accordingly, the Court finds that to the extent that the defendants violated ERISA's disclosure provisions, such violations were without effect. As a result, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted dismissing the plaintiff's claim against the Fund based on a failure to disclose.

### 5. *Breach of fiduciary duty*

▮▮ Finally the Court considers the plaintiff's cause of action against the individual defendants for breach of fiduciary duty because "*none* of these administrators of the Fund *ever* informed Reginald James as to his complete options and eligibility for nursing services under the terms of the [Plan]." Pl. Mem. of Law in Support of Cross Motion for Summary Judgment at 13. *See Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 29–30 (2d Cir.1996) (failure to alert plan participant of eligibility for continuation of coverage may constitute a breach of fiduciary duty where fiduciary is aware of potential loss of coverage); *Fortune v. Medical Assocs. Of Woodhull, P.C.*, 803 F.Supp. 636, 641 (E.D.N.Y.1992), citing, *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C.Cir.1990).

As one recent district court decision on the subject recognized however:

[s]ection 409 of ERISA, the statute which authorizes a suit for breach of fiduciary duties as set forth in § 404, provides that "[a]ny person who is a fiduciary [under this subchapter] ... shall be personally

liable to make good such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1109(a). Accordingly, such suits can only be maintained on behalf of the plan itself and not by an individual beneficiary in his or her own behalf. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140–43, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985) (recovery for violation of § 409 inures to the benefit of plan as a whole); *Donnelly v. Bank of New York Co.,* 801 F.Supp. 1247, 1253–54 (S.D.N.Y.1992); *O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833, 833–34 (S.D.N.Y.1991).

*Snyder,* 854 F.Supp. at 274. Accordingly, James cannot maintain a claim against the Plan trustees directly for breach of fiduciary duty.

█ This is not to say that in certain circumstances, such as where the beneficiary seeks "appropriate equitable relief," an ERISA claim for breach of fiduciary duty may not be maintained. *See Varity Corp. v. Howe,* —— U.S. ——, ——–——, 116 S.Ct. 1065, 1073–79, 134 L.Ed.2d 130 (1996) (recognizing individual cause of action for breach of fiduciary duty where former plan participants sought reinstatement as participants pursuant to 29 U.S.C. § 1132(a)(3)). However, as one district court recently recognized, "[t]here are no reported cases in which a plan beneficiary was permitted to maintain a § 1132(a)(3) claim for an alleged erroneous denial of benefits." *Blahuta–Glover v. Cyanamid Long Term Disability Plan,* CIV No. A. 95–7069, 1996 WL 220977 (E.D.Pa. Apr. 30, 1996); *see also Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 916 F.Supp. 843, 844 (N.D.Ill.1996) (a claim for wrongful denial of benefits does not constitute a cause of action under § 1132(a)(3)). Further, to the extent that the plaintiff's claim relates to an alleged failure to disclose relevant information, for the reasons set above, namely a failure to cause any substantive harm, his claim still fails.

█ Nevertheless, according to 29 U.S.C. § 1132(c), the Court may, in its discretion award a fine up to $100 per day for such violations. *See, e.g., Pagovich v. Moskowitz,* 865 F.Supp. 130, 136–37 (S.D.N.Y.

1994) (addressing whether damages should be awarded under section 1132(c)). As the *Pagovich* court stated, when making such a determination:

> courts have considered such factors as bad faith or intentional conduct on the part of the administrator, the length of the delay, the numbers of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary. *See Ziaee v. Vest,* 916 F.2d 1204 (7th Cir. 1990) (holding that in exercise of its discretion district court may consider factors such as number of requests made and number of documents withheld), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991); *Garred v. General American Life Ins. Co.,* 774 F.Supp. 1190 (W.D.Ark.1991) (penalties were assessed due to the willful conduct of the administrator and the harm suffered by plaintiffs in the form of aggravation, frustration, and the need to hire an attorney to wage a lengthy court battle); *Thomas v. Jeep–Eagle Corp.,* 746 F.Supp. 863 (E.D.Wis. 1990) (awarding penalties where administrator had no explanation for five-month delay); *Sandlin v. Iron Workers Dist. Council,* 716 F.Supp. 571 (N.D.Ala.1988), *aff'd mem. opinion,* 884 F.2d 585 (11th Cir.1989) (assessing penalties in view of lengthy delay, the frustration and distress of participant, and the deliberate misconduct of administrator).

*Pagovich,* 865 F.Supp. at 137. Further, a showing of prejudice is not a prerequisite to liability for failure to comply with ERISA's disclosure requirements. *Id.* at 137–38 (collecting cases and noting that some earlier district courts in this circuit have found otherwise); *Kascewicz v. Citibank, N.A.,* 837 F.Supp. 1312, 1321–23 (S.D.N.Y.1993).

Applying these standards, the Court denies the defendants' motion for summary judgment with respect to the plaintiff's claims pursuant to 29 U.S.C. § 1132(c). While it is true that James has not suffered any prejudice as the result of the defendants' alleged failure to disclose the Plan's terms, if the plaintiff is able to demonstrate that his requests for Plan information were repeatedly ignored, and as a result his wife declined

other gainful employment because he was under the impression that he was entitled to the payment of benefits based on her services, then imposition of civil penalties may be appropriate. However, because resolution of this issue requires addressing questions of fact, the Court is unable to make a determination with respect to this claim at this time. Accordingly, this case is referred to United States Magistrate Judge Michael L. Orenstein pursuant to Fed.R.Civ.P. 56(d) for this purpose, and the defendants' motion for summary judgment with respect to this claim is denied.

## C. *The plaintiff's cross motion*

Based on the Court's analysis, as set forth above, the plaintiff's cross motion for summary judgment is denied in all respects.

## III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted to the extent that all of the plaintiff's claims are dismissed with the exception of the request for statutory penalties; it is further

ORDERED, that the plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied; and it is further

ORDERED, that in regard to the plaintiff's claim for statutory penalties, this matter is hereby referred to United States magistrate Judge Michael L. Orenstein, pursuant to Fed.R.Civ.P. 56(d), for a hearing and to report and recommend as to whether, given the standards as set forth above, imposition of statutory penalties pursuant to 29 U.S.C. 1132(c) is appropriate and if so, in what amount.

SO ORDERED.