JOHN BEATTY *v.* EMPLOYERS' LIABILITY ASSURANCE CORP., LTD.

October Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed November 7, 1933.

*Marcell Conway* for the defendant.

*Henry Milne, John J. Finn* and *J. Ward Carver* for the plaintiff.

MOULTON, J. This is an action of contract upon a policy of liability insurance. After a trial by the court, and a finding of facts made and filed, judgment was entered for the plaintiff. The case is before us upon defendant's exceptions.

The facts as found are as follows: On the 7th of June, 1929, the defendant issued a policy of automobile liability insurance to the plaintiff, which contained the following: "Agreement I (a) To settle or to defend in the manner hereinafter set forth against claims resulting from the liability imposed upon the Assured by law on account of bodily injuries, including death at any time resulting therefrom, covered by this policy and accidentally sustained by any person or persons except those excluded thereunder. (b) To pay and satisfy judgments rendered against the Assured in legal proceedings defended by the Corporation and to protect the Assured against the levy of execution issued against the Assured upon the same, all subject to the limit expressed in item 5 of the Declaration. (c) To pay * * * all costs taxed against the Assured in any such proceedings; and all interest accruing before or after entry of judgment and up to the date of payment by the Corporation of its share of any judgment." "Agreement III. To defend as in this policy provided in the name and on behalf of the Assured any suits or other proceedings alleging such injuries and demanding damages on account thereof which may at any time be instituted against the Assured on account of such injuries, although such suits, proceedings, allegations, and demands are wholly groundless, false or fraudulent." "Agreement V. This policy covers, except as provided in Agreement VI. (a) Bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons, other than em-

ployees engaged in operating or caring for the automobiles covered, as a result of the ownership, maintenance, operation, or use of any of the automobiles enumerated and described * * *." "Agreement VI. This policy shall not cover: (a) When any of the said automobiles are being * * * (4) used for renting or livery use or the carrying of passengers for a consideration. Condition J. The named Assured by the acceptance of this policy declares the several statements in the Declarations hereby made a part hereof to be true, and this policy is issued upon such statements * * * Declarations. Item 7. None of the automobiles herein described is or will be rented to others or used to carry passengers for a consideration during the period of this policy."

On the 21st of September, 1929, the plaintiff left his home in Graniteville, Vermont, driving the automobile covered by the policy. With him was his mother, Mary Beatty, and their destination was Eustis, Canada. At Craftsbury, Vermont, an accident took place and Mrs. Beatty was injured. Before leaving home, the plaintiff and his mother made an agreement that the former would furnish, and drive his automobile, and the latter would pay the expense of the trip. In pursuance of this agreement, Mrs. Beatty purchased ten gallons of gasoline and two quarts of oil shortly after they started. This was the only occasion on which the plaintiff carried a passenger under such an arrangement.

On the 2nd of February, 1932, Mary Beatty brought suit against the plaintiff, alleging that her injuries were caused by the negligent operation of the latter's automobile. After service of the writ, the plaintiff gave notice to the defendant herein, and it employed an attorney-at-law, to investigate the claim and conduct the defense. The plaintiff informed the attorney as to the agreement with his mother, and the purchase of gasoline and oil by her.

On the 26th of March, 1932, the attorney wrote to the plaintiff herein, calling attention to the provisions of the policy which stated that it should not cover when the automobile was being used for carrying passengers for a consideration, and stating that his clients (referring thus to the defendant herein) considered that the plaintiff had violated the provisions and warranties of the policy in transporting his mother for some compensation. He suggested that the plaintiff should call at his

office and "sign an agreement to the effect that my clients will not waive any rights they may have by reason of your having violated the terms of your policy in the event that I proceed to defend this case as their attorney." The letter went on to say: "If you believe that the arrangement between you and your mother was not a violation of the terms of your policy and my clients are liable for the defense of your case and payment of judgment, then I will defend this suit for you on behalf of the Employer's Liability Assurance Corporation, Ltd., under a reservation of my client's rights leaving the final action of coverage to be determined after the trial of the pending case. The trial of the pending case of your mother against yourself may be determined if the arrangement between you and your mother amounted to a violation on your part of the terms of your policy. I would appreciate your arranging to enter into such an agreement with me, but under the circumstances whether or not you agree with it, I propose to defend this suit under those conditions. If it shall appear, after a judgment, that your mother was carried as a passenger for a consideration, then I believe the case will not be covered by your policy, and we will not be obliged to pay any judgment that may be rendered. The case will be defended to the best of my ability and you are at liberty, if you see fit, to associate counsel with me in the defense of the case at your own expense." The plaintiff wrote in reply, on the 7th of April, saying that "I do not consider that I violated the terms of my insurance policy and that I expect that you will defend me in behalf of the Employer's Liability Insurance Co., and that the Company will also pay any judgment my mother may procure against me. You may feel sure that I have nothing to do with the action my mother brings against me, and I will do everything that is right and just in the matter."

Neither the attorney nor anyone else acting for the defendant replied to this letter and no further communications, written or verbal, occurred between the plaintiff and the defendant regarding the extent to which the defendant would defend the case or the attorney would act as counsel therein. The plaintiff made no attempt to employ personal counsel, and believed that the Insurance Company intended to defend the case and to pay any judgment obtained against him. When the case came on for trial the attorney represented the present plaintiff and had

sole charge and control of the defense until after the verdict was returned and judgment entered thereon.

Both Mary Beatty and the plaintiff took the stand as witnesses and each testified in substantial accord to the agreement concerning the payments of the expenses, and the purchase of the gasoline and oil. After their testimony had been given, the attorney obtained leave to file and did file, an answer, which contained a general denial of liability on the part of John Beatty, and then alleged that John Beatty was insured in the Employer's Liability Assurance Company, Ltd., which company was defending the action on the ground of the nonliability of the defendant John Beatty; that Mary Beatty and John Beatty had "by this action and otherwise, jointly colluded to defraud and injure the said Employer's Liability Assurance Company, Ltd., who is the real defendant in this cause; and by reason of said collusion to unlawfully defraud said Employer's Liability Assurance Company, Ltd., of large sums of money and its legal rights in said cause"; and that "the attorney for the defendant in this cause is also the attorney for said insurance company and interposes the defense of collusion between the plaintiff and defendant on behalf of said insurance company." The issue of fraud and collusion was submitted to the jury.

The verdict was for Mrs. Beatty, and later on judgment was entered on the verdict and the costs were taxed, the whole amounting to $2,546.30.

On the 27th of April, the attorney wrote to John Beatty saying that his client, the defendant herein, refused to pay the judgment and any further liability "by reason of the violation of the terms of your policy which violation was proved through the verdict rendered." He also notified the plaintiff that he was withdrawing from the case and that the latter might, if he desired, secure other counsel to protect him on appeal.

On the 13th of July, an execution issued against the plaintiff, and he was committed to the county jail, where he remained four days, when he was released on furnishing a bail bond, to procure which he employed counsel. The attorney was duly advised of the plaintiff's incarceration, and notified that he would look to the insurance company for damages. The judgment and costs are still unpaid.

The position of the defendant is that the accident did not take place within the coverage of the policy, because the auto-

mobile was then being used for the carriage of a passenger for consideration; and that it is entitled to its legal rights under the policy.

The position of the plaintiff is that his agreement with his mother and the purchase of gasoline and oil by her did not make the journey a carriage for consideration; and, even if it did, it was a single instance, only, and the policy, rightly construed, must be taken to refer to the carriage of passengers as a business; and that the defendant, by its conduct, has waived the provision of the policy, or is estopped from taking advantage of it in defense of this action.

For the purposes of this opinion we may assume (although we are far from deciding) that the defendant's position regarding the clause in question is sound, and proceed to consider the other issues raised. To do so, however, we must first give attention to an exception taken by the defendant to the finding that the plaintiff believed that the company intended to defend the case on his behalf and to pay any judgment recovered against him. The ground of this exception is the lack of supporting evidence. But the letter written by him in response to the one received from the attorney, in which he stated his expectations as to the defense of the case and payment of whatever judgment might be rendered, coupled with the ensuing complete silence upon this point, on the part of the defendant insurance company, or its representatives, tended to show what his belief was, and was a sufficient basis for the finding. The exception is overruled.

"Waiver" and "estoppel," as applied to contracts of insurance, are terms which are interchangeably used, and in each case the meaning and result are the same. *Pellon* v. *Connecticut General Life Ins. Co.*, 105 Vt. 508, 168 Atl. 701 (decided at the October, 1933, Term of this Court). Yet they are in their elements essentially different. "A waiver involves the act or conduct of one of the parties to the contract, only. An estoppel involves the act or conduct or both parties to the contract * * *. A waiver is the intentional relinquishment of a known right * * *. It involves both knowledge and intent. An estoppel may arise where there is no intent to mislead. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position * * *. An estoppel always involves this element. A waiver may amount to an estoppel, but not

necessarily so." *Webster* v. *State Mutual Fire Ins. Co.*, 81 Vt. 75, 80, 69 Atl. 319, 320; *Foundry Mfg. Co.* v. *Farr*, 96 Vt. 382, 387, 119 Atl. 885.

This distinction and its application to certain clauses in contracts of insurance are illustrated in *Draper* v. *Oswego County Fire Relief Association*, 190 N. Y. 12, 82 N. E. 755. In that case, a fire insurance policy provided that the company would not be liable "for any loss resulting from any open fire, built by the insured with his knowledge and consent, within fifty feet from any insured building." The plaintiff's barn took fire from a spark from a bonfire which the plaintiffs had ignited to burn rubbish, which fire was forty feet from the building. The claim was made that the company, by its conduct, had waived this provision of the policy, and only this issue was submitted to the jury. The Court of Appeals held that this was error, and said, in the course of its opinion (page 17 of 190 N. Y., 82 N. E. 755, 756). "The doctrine of waiver is to relieve against forfeiture. It requires no consideration for a waiver, nor any prejudice or injury to the other party. The provision cited from the policy in this case, however, is not a condition the breach of which works any forfeiture. It is simply an exception from the risk insured against. In other words, the policy does not cover a loss from any of the causes specified in the by-law; but, nevertheless, it remains in full force and effect until the subject-matter of the insurance is destroyed * * *. To recover in this case, it was therefore necessary for the plaintiffs to establish, not that the defendant waived the breach of a condition of the policy, but that in some way the obligation of the defendant was so extended as to include loss from a bonfire situated within fifty feet of the insured buildings. There is no pretense that any oral contract between the parties included such a loss; and hence there can be no right to a reformation of the policy. The only other ground on which the plaintiffs could succeed was by establishing that the defendant has estopped itself from denying that the loss fell within the terms of the policy by some action or conduct which had misled the plaintiffs to their injury." See, also, *Gerka* v. *Fidelity & Casualty Co.*, 251 N. Y. 51, 56, 167 N. E. 169; *Humes Construction Co.* v. *Philadelphia Casualty Co.*, 32 R. I. 246, 79 Atl. 1, 3, 4, Ann. Cas. 1912D, 906; *Belt Automobile Ind. Assn.* v. *Ensley, etc., Co.*, 211 Ala. 84, 99 So. 787, 790.

■■ In the policy involved in the case before us, there are two clauses which deal with the use of the insured automobile for the carriage of passengers for a consideration. One of them occurs among the declarations which are declared to be true by the insured and is that the automobile will not be so used. This is a promissory warranty (see *Record* v. *Royal Ins. Co.,* 253 Mass. 617, 619, 149 N. E. 546; *Elder* v. *Federal Ins. Co.,* 213 Mass. 389, 390, 391, 100 N. E. 655) and, nothing else appearing, a breach of it would avoid the policy during the period of such use. *Allen* v. *Berkshire, etc., Ins. Co.,* 105 Vt. 471, 168 Atl. 698 (decided at the October, 1933, Term, of this Court). But, since this result would be a forfeiture, and the provision is for the benefit of the insurer, the latter may, by conduct or otherwise, be taken to have elected not to insist upon it. (See *Cummings* v. *Conn. Gen'l Life Ins. Co.,* 102 Vt. 351, 360, 148 Atl. 484.) Thus, the doctrine of waiver may be applied, although, if the insured has been prejudiced by reliance upon such conduct, the elements of an estoppel are also present, for, as we have seen, a waiver may amount to an estoppel. *Webster* v. *State Mutual Fire Ins. Co., supra.* We need, however, give no further attention to this clause, because the letter of the attorney to the plaintiff placed the denial of liability solely upon the provision which remains for consideration.

■ This clause is found among the agreements of the policy and states that "this policy does not cover" the designated use of the automobile. This provision, like that in the Draper Case, *supra,* is not a condition the breach of which causes a forfeiture, but is an exception from the risk insured against. If this agreement, on the assumption that defendant's construction of it is sound, is not an impediment to recovery in this case it must be because, on the facts as found and the inferences which may be fairly drawn from such facts, the defendant has estopped itself from denying that the loss has fallen within the terms of the policy by some conduct upon which the plaintiff has relied to his prejudice.

■ Where a liability insurance company, with knowledge of the facts, and no effective reservation of its rights under its policy, takes charge of and defends an action against the insured, it is held to be estopped to deny its liability upon the ground that the risk was not covered. *Lunt* v. *Ætna Life Ins. Co.,* 261 Mass. 469, 473, 159 N. E. 461, 463; *Rieger* v. *London*

■

*Guaranty & Accident Co.*, 202 Mo. App. 184, 215 S. W. 920; *Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 23, 137 N. Y. S. 1064, 1065, and see *Fairbanks Canning Co.* v. *London Guaranty, etc., Co.*, 154 Mo. App. 327, 133 S. W. 664, 666. The insurer may, if it is in doubt as to its liability, refuse to assume the defense, and await the result, thus leaving the insured free to defend or compromise in his own way through his own counsel; or it may obtain some agreement with the insured, under which, by proceeding to defend, it shall not be considered to have enlarged its obligation under the policy, thus reserving its rights under that instrument. *Humes Construction Co.* v. *Philadelphia Casualty Co.*, 32 R. I. 246, 250, 251, 79 Atl. 1, 3, Ann. Cas. 1912D, 906; *Tozer* v. *Ocean, etc., Corp.*, 99 Minn. 290, 109 N. W. 410, 411.

█ In the instant case full information as the arrangement between the plaintiff and his mother, concerning the payment of the expenses of the automobile trip, was imparted to the attorney by the plaintiff. The attorney in his subsequent letter stated clearly the position of the insurer, that by reason of the arrangement, the risk was not covered by the policy, and requested an agreement from the plaintiff that by proceeding to defend, the insurer should not be taken to have abandoned its right thereunder. He suggested the employment of other counsel, to be associated with him, at the plaintiff's expense. But he did not renounce the defense, or retire from the control and management of it. On the contrary, he distinctly stated that, whether or not the plaintiff agreed, he proposed to defend the action under the conditions mentioned. There was, however, no assent on the part of the plaintiff to this proposition. In his letter to the attorney he unequivocally asserted his expectation that the action would be defended, and the judgment, if obtained against him, would be paid. Complete silence upon this point was thereafter maintained by the attorney, and everybody else who was active on behalf of the defendant, and the plaintiff rested in the belief that the latter would defend, and pay whatever damages might be recovered. He employed no counsel, and the attorney remained in sole charge. There is no specific finding that the plaintiff relied upon this situation, but, from the facts found as to his belief and failure to retain counsel, it is a fair inference that he did so rely, and so we may presume, in support

of the judgment, that such inference was drawn by the trial court. *Labor* v. *Carpenter*, 102 Vt. 418, 422, 148 Atl. 867.

The situation is, in many respects, parallel with that disclosed in *Gerka* v. *Fidelity and Casualty Co.*, 251 N. Y. 51, 167 N. E. 169. In that case the policy did not cover in case of injury to a person by a vehicle while being driven by a person under sixteen years of age. At the time of the accident, a youth under sixteen was driving. Before the trial, the attorney employed by the insurance company was informed of this fact, and wrote to the insured that "under the circumstances we are hereby advising you that further handling of this case on our part on behalf of the Fidelity and Casualty Co. of N. Y. is being done under a full reservation of all policy rights, pending a complete and thorough investigation of all the facts connected with the matter." The president of the insured called upon the attorney and informed him that "we could not accept their reservation; that we paid for a policy and did not intentionally breach that policy, and we would hold them to it and that they would either protect us under the policy or we would take our own lawyer and hold them liable for whatever we might lose thereby." Nothing further was said upon this subject. The court said (page 57 of 251 N. Y., 167 N. E. 169, 170) : "The defendant did not at any time offer to turn over the papers in the action to the insured. It continued with the defense of the action, paid the witness fees, conducted the trial, appealed to the Appellate Division, and offered to pay the plaintiff a sum of money to settle the action. Its conduct was inconsistent with its later claim of nonliability under the policy. When it proceeded with the defense of the negligence action, with knowledge of its claimed defense under the policy, it made its election and estopped itself from now urging that defense."

So, here, we hold that by proceeding to defend the action brought against the insured, with knowledge of its claimed nonliability under the policy, and of the absence of the assent by the insured to the proposed reservation, the defendant is estopped from claiming that the loss was not covered by the contract of insurance.

The authorities cited by the defendant are, in the main, distinguishable. In *Basta* v. *U. S. Fidelity & Guaranty Co.*, 107 Conn. 446, 140 Atl. 816, an insurer was held not to be estopped to claim that the loss was not covered by the policy when the

defense was undertaken under notice to the insured of full reservation of rights, to which, so far as appears, the insured made no objection, and nothing was done which was inconsistent with the reservation. Apparently there was here an acquiescence by the insured. The same is true in *Sargent Mfg. Co. v. Travelers Ins. Co.*, 165 Mich. 87, 130 N. W. 211, 34 L. R. A. (N. S.) 491, where, besides making no objection to the reservation, the insured did not surrender the entire conduct of the defense to the insurer. In *Meyers v. Continental Casualty Co.* (C. C. A.), 12 Fed. (2nd) 52, the insured made no reply to the notice of reservation, and the court made the absence of an estoppel to depend in part upon the failure of the insured to object to the defense of the action by the insurer. In *Coolidge v. Standard Acc. Ins. Co.*, 114 Cal. App. 716, 300 Pac. 885, the assured signed an agreement of reservation of rights under the policy. *Mason-Henry Press v. Ætna Life Ins. Co.*, 211 N. Y. 489, 105 N. E. 826, is distinguised in *Gerka v. Fidelity & Casualty Co., supra.* In *Unnewehr Co. v. Standard Life & Acc. Ins. Co.* (C. C. A.), 176 Fed. 16, no question of estoppel appears to have been decided. In *Commercial Casualty Ins. Co. v. Fruin-Colnon Contracting Co.* (C. C. A.), 32 Fed. (2nd) 425, 430, repeated notices were given, to which the equivocal answer was returned, "we understand that you are handling this case under the terms of your policy"; and the insured was given opportunity to assume full control of the defense, if it did not accede to the notice, which it did not do. It is true that the court said that "assent by the assured is not indispensable," but we think that the better rule is that there must be acquiescence, either express or implied, on the part of the insured in order to avoid an estoppel, where, after stating its position, the insurer remains in full control of the defense.

█ It cannot be maintained that the insured, in the case before us, has not been prejudiced. The defendant had complete control and management of his interest, and he was deprived of any advantage that he might have had if the defense had been conducted by counsel of his own choosing. "The defendant cannot be permitted now to say that the plaintiff was not injured thereby, or that * * * the result of the proceeding would have been the same if the plaintiff had taken charge." *Humes Construction Co. v. Philadelphia Casualty Co., supra.* To the same

effect is *Fairbanks Canning Co.* v. *London Guaranty & Accident Co., supra,* 154 Mo. App. 327, 133 S. W. page 867.

And besides this, the insured has suffered a real injury through the conduct of the case by the attorney employed by the defendant. As we have seen, during the course of the trial, he filed an answer, in which he announced that he was attorney for the insurer, who was the real defendant, and charged the client whom he had been employed to defend with an attempt to defraud the insurer. That this proceedure was extremely detrimental to the plaintiff herein cannot be doubted. His good faith and honesty were publicly impugned. The fact that he was insured, which as we have repeatedly held, will cause a reversal if brought to the attention of the jury by the plaintiff in a negligence action (see *Landry* v. *Hubert,* 100 Vt. 268, 277, 137 Atl. 97, and cases cited), was made public by the counsel who appeared for him, for the benefit of the insurer as a basis for the charge of collusion. That no man can serve two masters is as true today as it was when the words were first spoken. A lawyer, retained by an insurance company to defend a case on behalf of a policy holder, as long as he remains in the case, owes his complete and entire fidelity to the person whom he represents. He cannot substitute the interests of the insurer for those of the insured, and the company that employs him cannot be heard to claim that the insured is not prejudiced when he pursues so reprehensible a course of conduct.

*Judgment affirmed.*