In re Annette LYNCH, Debtor.

Raymond J. OBUCHOWSKI,
Esq., Trustee,

v.

PHICO INSURANCE CO., Defendant.

Bankruptcy No. 97–10381.
Adversary No. 97–1084.

United States Bankruptcy Court,
D. Vermont.

Oct. 16, 1998.

**814**

L. Chalidze, Of Counsel to Miller, Faignant, & Whelton, PC, for Raymond J. Obuchowski, Rutland, VT, Chapter 7 Trustee for the Estate of Annette Lynch (Trustee).

P. D. Saxer & S.T. Hart, Saxer, Anderson, Wolinsky & Sunshine, P.C., Burlington, VT, for Phico Insurance Co.

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.

### *MEMORANDUM OF DECISION ON PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT*

Trustee brought this Motion for Partial Summary Judgment[1] to determine whether Phico waived defenses to coverage in malpractice actions against the Debtor, Annette Lynch, ("Debtor"). Trustee claims that Phico waived all defenses to coverage by not citing specific defenses in ten of the nonwaiver agreements. Trustee claims that the remaining agreement is invalid as a unilateral reservation of rights because it was signed after Phico had already undertaken Debtor's defense. We hold that Phico waived defenses in ten of the actions due to its failure to reserve specific defenses to coverage, but

that Phico validly reserved its defenses to coverage as to the remaining cause of action. Trustee's Motion for Partial Summary Judgment is granted in part and denied in part.

### FACTUAL AND PROCEDURAL HISTORY

Debtor filed a Chapter 7 petition on March 3, 1997. This Court entered a discharge on February 5, 1998. Debtor was a psychologist. Phico was Debtor's malpractice insurer. Eleven patients brought malpractice actions against Debtor. Before agreeing to defend Debtor in ten of those actions, Phico had Debtor sign non-waiver agreements whereby it attempted to retain any and all of its defenses to coverage. In the remaining action, Defendant reserved specific defenses to coverage, but only after it had begun investigating the action.

Trustee filed this Motion for Partial Summary Judgment On Coverage to determine the validity of the nonwaiver agreements issued by Phico. Trustee claims that under Vermont law, Phico waived its coverage defenses in ten of the actions because the nonwaiver agreements do not assert any specific defenses to coverage. Trustee claims that the remaining nonwaiver agreement is invalid because it is a unilateral reservation of rights, and in the alternative, because the agreement was not signed until after Defendant acquired control over Debtor's defense. No facts are in dispute. This matter is ripe for Summary Judgment[2].

### VALIDITY OF NON–WAIVER AGREEMENTS

When an insurance company undertakes the defense of its insured, it waives any defenses it may have against payment under the policy unless it explicitly reserves its rights. *American Fidelity Company v. Kerr*, 138 Vt. 359, 416 A.2d 163 (1980). In Vermont, the insured must consent to the

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. Sec. 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A) and (E). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

2. We have recited the standards for Summary Judgment *ad nauseum* in other memorandums of decision and do not recite them here.

insurer's reservation of rights, unilateral reservations by the insurer are ineffective. *Id.* at 363, 416 A.2d at 165.

■ Ten of the non-waiver agreements issued by Defendant do not set forth any specific grounds for potential denial of coverage.[3] Trustee claims that this renders the agreements defective as a matter of law. The premier case regarding the validity of non-waiver agreements in Vermont is *Cummings v. Connecticut General Life Ins. Co.*[4] In that case, the court said:

> (W)hen one defense is specified by an insurer as its reason for refusing to pay a loss, all others are waived.... The rule works no hardship on the insurer. Considerations of public policy requires that he (the insurer) shall deal with his individual customer with entire frankness. He may refuse to pay and say nothing as to the basis of his refusal. In that case, all defenses to an action on the policy are available to him. He may refuse to pay on a particular ground reserving the right to defend on other grounds, with the same result. But, when he deliberately puts his refusal to pay on a specified ground, and says no more, he should not be allowed to "mend his hold" by asserting other defenses after the insured has taken him at his word and is attempting to enforce his liability.

*Cummings v. Connecticut General Life Ins. Co.*, 102 Vt. 351, 361–362, 148 A. 484, 486–487 (1930).

Although decided in the life insurance beneficiary context, Vermont courts apply the *Cummings* rule to third-party liability insurers, holding that when liability insurers cite specific defenses to coverage in non-waiver agreements, all defenses not cited therein are waived. *In re Aberdeen 100, Inc.*, 1995 WL 447341 (Bankr.D.Vt.1995); *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 289 A.2d 669 (1972). Defendant claims that the *Cummings* rule does not apply because its nonwaiver agreements do not mention any specific defenses, but instead reserve all potential defenses.

*Cummings* is based on the premise that the insurer owes certain duties to the insured. "Considerations of public policy require that he should deal with his individual customer with entire frankness." *Cummings*, 102 Vt. at 361, 148 A. at 487 (emphasis added). While there are no Vermont cases directly on point, it is counterintuitive that a liability insurer can meet its duty of entire frankness by merely omitting references to specific coverage defenses. If that were the case, insurers would have no incentive to name specific defenses in nonwaiver agreements, because they could hide behind the protection of broadly-worded boilerplate

3. The typical nonwaiver agreement said:

> It is hereby mutually agreed between Annette Lynch, M.D., D.P.H., and Phico Insurance Company (hereinafter referred to as "the Company") as follows:
> The Company or any of its representatives or designated attorneys may proceed to investigate the cause or circumstances under which an incident has alleged to have occurred regarding the claim of (plaintiffs) currently pending.... It is agreed that the Company, its representatives or designated attorneys may investigate any and all things affecting its rights directly or indirectly, present or remote, in connection with policies which are or may be applicable to the claim in question, regardless of their applicability. In consideration of the trouble and expense in doing so, the Company, its representatives, agents, or attorneys, may prepare for or actually defend all or a portion of the claim without prejudice to the Company under the policies claimed to be applicable to the matters in question, still reserving to the Company, all its rights and defenses under the policies of insurance as fully and com-

> pletely as if the Company had refused to take any action whatsoever regarding investigation, adjustment, or defense of any claim. All the acts of all parties with respect to this matter shall be deemed to be voluntary and to be pursuant to the agreement herein expressed.
> It is agreed that anyone executing this agreement on behalf of the Company has no authority, either express or implied, to waive or invalidate any of the conditions of the insurance policies applicable or claimed to be applicable to the claim in question, or to waive or invalidate any of the rights of any of the parties to this agreement.
> The intent and purpose of this agreement is to permit the investigation and/or defense of all matters relating to the incident in question and the liability, if any, of the Company and/or insured, without incurring any admission of liability or consent as to coverage issues and to preserve without estoppel, waiver, or forfeiture, all of the rights of any of the partes hereto.

4. 102 Vt. 351, 148 A. 484 (1930).

with absolutely no fear of waiving any defenses. This is inapposite to the insured's duty of entire frankness mandated under *Cummings*. As the court said in *Commercial Ins. Co. of N.J. v. Papandrea* [5]:

> The insurer and the insured alike owe to each other the duty of utmost good faith in their dealing together, and in exercising the privileges and discharging the duties specified in and incident to the policy contract (citation omitted). In this relationship of trust, the insurance carrier and insured whether named or additional, are required to rise to something higher than the standards of the market place. *Full candor and complete honesty are required.*

121 Vt. 386, 159 A.2d 333, 336 (1960) (emphasis added).

The need for full candor and frankness is even more evident in third-party liability insurance cases. The insured is leaving the fate of its defense in the hands of the insurer, an insurer who may have a conflict of interest with the insured.[6] In such circumstances, we do not think that it is unreasonable to demand that the insurance carrier inform the insured of each possible defense to coverage.[7] "Yet, when a bona fide attempt to comply with the requirements of a policy has been made, simple fairness requires that the insurer point out any defects of which it has knowledge." *Haley v. Continental Cas. Co.*, 749 F.Supp. 560 (D.Vt.1990) *aff'd sub nom Haley v. Continental*, 927 F.2d 593 (2d Cir.1991).

Defendant relies on a stretched reading of *Cummings* to assert that the case actually condones the use of boilerplate nonwaiver agreements. "He may refuse to pay and say nothing as to the basis of his refusal. In that case, all defenses to an action on the policy are available to him." *Cummings*, 102 Vt. at 361, 148 A. at 487. Defendant claims that since its nonwaiver agreements say nothing as to the basis of their refusal, all defenses to paying the policy remain available to it.

Defendant, however, ignores an important part of the sentence, "(h)e may refuse to pay...". When the insurer refuses to pay (or defend) a claim outright, the insured is immediately put on notice that its interests are adverse to its insurance company. In such a case, the insurance company is being entirely frank with the insured. By refusing to pay or defend a claim, the insured is immediately put on notice that its insurance company has an adverse interest to its own, and the insured is likely to seek independent counsel.

For precisely the same reason, nonwaiver agreements that retain specific defenses are enforceable. Again, in such cases, the insur-

---

**5.** 121 Vt. 386, 159 A.2d 333 (1960).

**6.** There is a strong likelihood of conflicts of interest in third-party liability insurance. While preparing the insured's defense, the insurer may come across its own defenses to coverage. As such, it is important that the insured know of each and every specific policy defense that is likely to be asserted by the insured. "The insurer must fulfill its policy-contracted obligation with utmost loyalty to its insured; not for the purpose of developing, secretly or otherwise, a policy defense." *Meirthew v. Last*, 376 Mich. 33, 38, 135 N.W.2d 353, 356 (1965).

**7.** We realize that sometimes, the insurance carrier will not have notice of its defenses to coverage until it has time to investigate the claim. In such a case, we agree with the following commentary on insurance coverage:

> A reservation of rights letter (or non-waiver agreement) should either quote or make specific reference to the policy provisions which are the basis for the insurer's reservation of the right to assert that there is no coverage for the claim. If further investigation is required to ascertain whether coverage is available, the reservation of rights letter (or non-waiver agreement) should state that the insurer reserves the right to disclaim coverage based upon further factual development. On the other hand, an insurer may not generally reserve its rights to defenses based upon 'such other reasons as may appear during our investigation of this claim or suit.'

Barry R. Ostrager & Thomas R. Newman, *Handbook On Insurance Coverage Disputes* § 2.04 at 45 (6th ed.1993) (citation omitted).

The nonwaiver agreements in question did not say that further investigation was required to determine coverage. *C.f. In Re Aberdeen 100, Inc.*, 1995 WL 447341 (Bankr.D.Vt.1995) (holding that nonwaiver agreement that reserved rights to "disclaim coverage under policy provisions, conditions, or exclusions which may prove to be pertinent to this claim as additional facts presently unknown to us may warrant" did not waive rights to coverage). Rather, the agreements sought to preserve any and all of the insurer's defenses throughout the investigations and subsequent trials.

er is being entirely frank with the insured. It is warning the insured that there is a chance the insured might not be covered, and pointing out why coverage might not exist. Specific nonwaiver agreements give the insured the ability to examine the insurer's position in comparison to its own, and determine whether or not the insurer can adequately represent the insured's interests. "That information should include the basis for the position taken by the insurer. By specifying which defenses the insurer is retaining, the insured may 'make an intelligent decision whether to consent to the assumption of his defense and the control of his lawsuit by the carrier, or to take another course.'" *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 84 (1997) (citation omitted).

If an insurer reserves *all* of its potential defenses to coverage, however, the insured is left in the dark. The insured is not put on notice of a direct adverse interest, as is the case when the insurer denies coverage outright. Nor does the insured have adequate notice of the basis of the insurer's retained defenses. As other courts have noted:

> (I)t is important that the insurer adequately inform the insured of the rights which it intends to reserve; for it is only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer. Accordingly, bare notice of a reservation rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted and to the potential conflict of interest.

*Cowan v. Insurance Co. of North America*, 22 Ill.App.3d 883, 893 318 N.E.2d 315, 326 (1 Dist.1974); *also see Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018 (Wyo. 1993); *Meirthew v. Last*, 376 Mich. 33, 135 N.W.2d 353 (1965).

We hold that Phico failed its duty of "entire frankness" mandated under *Cummings* by issuing ten nonwaiver agreements without specifying the defenses to coverage retained by the carrier. We grant Plaintiff's Motion For Partial Summary Judgment On Coverage to those ten non-waiver agreements, holding that the Phico waived all of its defenses to coverage when it entered into the defective nonwaiver agreements with Debtor.

### VALIDITY OF HEDY VALLIN NONWAIVER AGREEMENT

Of the eleven agreements procured by Phico, only one reserved specific defenses to coverage.[8] Trustee contends that this agreement is nonetheless invalid for two reasons: 1) because the insurer tried to "mend its hold" by converting a unilateral reservation of rights agreement into a nonwaiver agreement *ex post facto* by sending up a signature page for the Debtor to sign days after she had received the reservation of rights; and 2) because the insurer had already commenced its defense of Debtor before it procured the nonwaiver agreement.

In Vermont, a nonwaiver agreement, rather than a unilateral reservation of rights, is required for an insurance company to avoid waiving defenses to coverage. *American Fidelity Co. v. Kerr*, 138 Vt. at 363 416 A.2d at 165 (1980). "A nonwaiver agreement is, in essence, a reservation of rights to which the insured has assented." Barry R. Ostrager & Thomas R. Newman, *Handbook On Insurance Coverage Disputes* § 2.04 at 45 (6th ed.1993). Here, the insured has as-

---

8. The relevant portion of the Hedy Vallin reservation of rights letter reads:

> Please be advised, however, that such representation is being provided under a formal Reservation of Rights. There are several items contained in the Complaint which exceed the scope of coverage under the policy and as such, if the jury finds that to have been true, then you necessarily have an uninsured interest.
>
> Specifically, one of the allegations in the Complaint is that you attempted to foster an inappropriate sexual relationship with the plaintiff.

> Please be advised that under the policy of insurance that you carry with the PHICO Insurance Company, Exclusion (m) precludes from coverage any claim based upon an act of fornication, adultery, deviate sexual behavior or sexual assault. In addition, in the Complaint they are requesting punitive damages. Under the policy, under Exclusion (e), our policy does not respond to any liability for punitive or exemplary damages, treble damages, any sum awarded in excess of compensatory damages or any multiple of compensatory damages.

sented to the reservation of rights agreement, and therefore, it is not a "unilateral reservation of rights" under Vermont law. Contrary to Trustee's assertion, no particular form of acquiescence by the insured is required. "(W)e think that the better rule is that there must be acquiescence, either express or implied, on the part of the insured in order to avoid an estoppel..." *Beatty v. Employers' Liability Assur. Corp.*, 106 Vt. 25, 36 168 A. 919, 924 (1933). By signing a signature page a few days after receiving the reservation of rights, Debtor acquiesced to the defendant's reservation of rights letter, and it therefore is a valid, bilateral agreement under Vermont law.

 Trustee also contends the nonwaiver agreement is invalid because it was signed after Phico had undertaken Debtor's defense. In Vermont, an insurer who "control(s)...the defense, with knowledge of the facts and without consent of the insured..." elects to stand by the terms of the policy and waives all defenses to coverage. *American Fidelity Co. v. Kerr*, 138 Vt. at 363, 416 A.2d at 165. By agreeing to defend the insured prior to obtaining a nonwaiver agreement, Trustee claims that Phico waived any defenses to coverage.

The agreement was signed on February 10, 1993. Prior to that date, Phico hired an insurance company to defend Debtor and investigated the claim.[9] The answer to the complaint was not served until after the nonwaiver agreement was signed by the Phico.

In *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, an insurance company hired an attorney to represent the insured, entered an appearance, and began an investigation of the facts surrounding the claim before attempting to obtain a nonwaiver agreement. *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 102 A.2d 326 (1954). The court found that the insurer had not waived its defenses. The court noted:

> In the instant case the bill shows that the only thing done after the suit was brought was the entering of an appearance for Houle; that after such date the facts were investigated and then the insurer attempted to procure from Houle, the insured, and agreement under which it could defend with reservations but it had not obtained one. This conduct on the part of Houle forces the insurer, unless it has another remedy, into the position of having to defend, or denying liability and not defending and taking its chances on how effective Houle's defense might be...

*Farm Bureau Ins. Co. v. Houle*, 118 Vt. 154, 158, 102 A.2d 326, 328–29 (1954).

Under the facts before us, we do not think Phico acted unreasonably in performing a preliminary investigation and assigning counsel to the claim before seeking a nonwaiver agreement. Phico did not even file its answer to the complaint until February 10, 1993, a full month after Debtor signed the nonwaiver agreement. As such, we do not think that Defendant "controlled" Debtor's case at the time Debtor signed the nonwaiver agreement. *Farm Bureau Ins. Co. v. Houle*, 118 Vt. 154, 102 A.2d 326 (1954); *American Fidelity Co. v. Kerr*, 138 Vt. 359, 416 A.2d 163 (1980). The first part of today's decision mandates that insurers be specific as to the defenses they are reserving. It is only fair that insurers have adequate time to investigate claims so that they may cite these specific defenses.

### CONCLUSION

Trustee's Motion For Partial Summary Judgment is granted as to the ten nonwaiver agreements in which Phico did not reserve specific defenses. Trustee's Motion is denied as to the remaining agreement. Counsel for Trustee to settle an Order on Phico's counsel on Ten (10) days notice.

---

9. Plaintiff cites Defendant's internal files to note that activity had been ongoing in Debtor's case before Debtor signed the nonwaiver agreement. Those files show: 1) the insurance carrier "received a new suit" on December 12, 1992; 2) on December 2, 1992 the adjuster received an extension until January 4 from Plaintiff's attorney in the underlying matter; 3) the matter was assigned to a defense attorney on December 28, 1992; 4) the adjuster was instructed to submit the Initial Formal Report by March 1; and 5) Claims Services completed the Assignment on December 28, 1992.