N. Sec. Ins. Co. v. Pratt, No. 838-11-10 Wncv (Crawford, J., May 19, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                                                CIVIL DIVISION
Washington Unit                                                          Docket No. 838-11-10 Wncv

Northern Security Insurance Company
        Plaintiff

        v.

Claudia and David Pratt and
Greystone Estates Residents Association
        Defendants

DECISION re:
Northern Security's Motion for Summary Judgment

        This insurance dispute arises out of an underlying dispute between Claudia and David Pratt and Greystone Estates Residents Association.   The Pratts own a lot in Greystone Estates. Erosion from the Pratts' lot allegedly damaged a stormwater basin essential to Greystone's stormwater permit.  Greystone claims that the Pratts refused to stop the existing erosion, prevent future erosion, or pay for the required cleanup.  Greystone paid for the cleanup and assessed the Pratts $7,166.60 pursuant to the by-laws of the homeowners' association.  The Pratts did not pay, prompting Greystone to record a lien against the Pratts' lot.  The Pratts then hired private counsel, Attorney Franco, and initiated a declaratory judgment action in the Chittenden Civil Division to remove the lien.  Greystone counterclaimed to enforce the lien.  An amended counterclaim added negligence and nuisance claims.

        The Pratts do not reside on their Greystone lot in Richmond.  They live in Colchester. Their Colchester home is insured with Northern Security Insurance Company.  The Greystone lot is not separately insured.  In the course of the Chittenden litigation, the Pratts notified Northern Security of Greystone's counterclaim, seeking a defense and coverage under their homeowner's policy.  The policy extends coverage to vacant land owned by the Pratts.  The Pratts claim that their Greystone property is vacant land insured under the policy.

        Northern Security offered to provide a defense for the negligence and nuisance claims subject to a reservation of its right to later contest the extent of coverage, if any.  To ensure that it would not later be found to have waived its defenses, Northern Security proposed that the Pratts sign a bilateral non-waiver agreement reserving any defenses to coverage.  The Pratts refused to sign the non-waiver agreement unless Northern Security agreed to hire their counsel of choice, Attorney Franco, who is representing them in the Chittenden litigation and in this dispute. Northern Security declined to hire Attorney Franco because he was involved in the insurance dispute, explaining that it would hire independent counsel of its choice, Attorney Bisson, and urged the Pratts to reconsider.

        Northern Security explained its position as follows:

Northern Security cannot agree to hire you or me to provide the proposed defense. You and I already represent the parties on the issue of coverage, which is an issue on which the interests of the parties conflict. Northern Security does not wish to retain an attorney who might be tempted to use the defense as an opportunity to affect the outcome of the coverage dispute. That is why Northern Security insists on retaining someone independent of the coverage dispute to provide the defense. Attorney Bisson would have no conflict of interest with the Pratts because he would have no role in the coverage dispute. His engagement would be limited solely to defending the Pratts against the above-referenced claims without regard to any coverage issues; the Pratts would be his clients and defending would be his sole role.

Letter from Robert Mello to John Franco (dated May 1, 2010). The Pratts stood by their claimed right to counsel of their choice and refused to reconsider. They have never signed the non-waiver agreement, and Northern Security has not appointed independent counsel to represent them.

Instead, Northern Security, now represented by the previously proposed independent counsel, Attorney Bisson, filed this declaratory judgment action. In its summary judgment motion, Northern Security argues that: (1) there is no coverage under the policy because the Pratts' Greystone property is not vacant; (2) there is no coverage under the policy for a "loss assessment"; and (3) the Pratts forfeited coverage by refusing to sign the bilateral non-waiver agreement and declining independent counsel. If none of those claims succeed, Northern Security requests an order allowing it to appoint independent counsel of its choice to represent the Pratts in the underlying litigation without waiving its defenses, and an order establishing that it is not liable for any fees and expenses for Attorney Franco's representation that the Pratts have incurred thus far.

*Whether the Pratts' Greystone lot is vacant*

The parties agree that the policy extends coverage to vacant property. Northern Security asserts that the lot is improved, not vacant. In support, Northern Security cites an allegation in its complaint in this case and the Pratts' answer. This is the allegation:

> The policy defines the term "insured location" to include the Pratts' "residence premises" as well as "vacant land . . . owned by . . . an 'insured.'" Upon information and belief, Lot 6 at Greystone Estates contains improvements and, therefore, does not qualify as "vacant land" and does not meet the definition of an "insured location" under the policy.

Complaint ¶ 8 at 2. This is the answer:

> The characterization is denied. The full policy document speaks for itself.

Answer ¶ 8 at 1. The Pratts have clearly denied that the lot is not vacant; they did not admit it.

2

In the underlying counterclaim in the Chittenden case, Greystone alleges that the lot is vacant: "On September 23, 2009, after receiving no communication from Counterclaim Defendants, the Board unanimously approved a motion to impose a lien on their *vacant* Lot #6 for nonpayment of assessment for damage to stormwater facilities if payment was not received by September 25, 2009." Amended Counterclaim ¶ 33 at 6 (emphasis added).

Attorney Franco asserts in the opposition to summary judgment: "The Pratts' lot #6 is vacant." Attorney Franco's assertion is not evidence, but it is subject to Rule 11.

The current record does not permit the court to determine whether the lot is vacant. This is a disputed factual issue which cannot be resolved through the motion for summary judgment.

*Whether the policy covers a "loss assessment"*

Northern Security argues that the underlying litigation involves an *assessment* that Greystone seeks to recoup by enforcing its lien and that the policy provides no coverage for a "loss assessment." The Pratts agree that the policy provides no coverage for a loss assessment. They seek a defense and coverage only for Greystone's negligence and nuisance claims. As they put it:

> The Pratts have never sought defense or coverage for the challenge they made to the authority of [Greystone] to impose a self-help lien on the property. They sought and now seek defense and coverage only for [Greystone's] counterclaims for negligence and nuisance. In fact, they made this clear in the amended complaint in the Chittenden District Civil Unit, which sought defense and coverage on the counterclaims. Northern successfully moved to have that portion of the amended complaint dismissed, only to raise the same issue here a few months later!

The Pratts' Opposition to Summary Judgment at 4 (filed Mar. 28, 2011). The real question, however, is whether the negligence and nuisance claims are excluded "loss assessments" rather than independent covered claims.

This issue appears to be what drove Northern Security's initial skepticism about coverage but ultimate determination to provide a defense. As Northern Security then said:

> Upon receipt of the duly-executed dismissal stipulation and [bilateral non-waiver agreement], Northern Security will retain counsel to defend the Pratts against all claims asserted by the Association in its Amended Counterclaim other than its "loss assessments" claim, which you acknowledge in your March 25th e-mail is not covered by the Pratts' policy with Northern Security.
> .   .   .
> [I]t appears very doubtful that any of the Association's claims are covered by the policy. The reason why Northern Security is prepared to provide a defense at this time is because footnote 3 in Judge [Toor's] decision on the Association's motion

3

for writ of attachment suggests that the Association may be asserting a negligence claim for property damage that is separate from its "loss assessments" claim. Whether that claim really is separate from the "loss assessments" claim, and whether it would constitute a claim for damages because of property damage caused by an occurrence to which the policy applies, are questions that remain to be resolved.

Letter from Robert Mello to John Franco (dated April 19, 2010).

Judge Toor's decision containing "footnote 3" is not in the record of this case, and Northern Security has not briefed in any detail its current view that the negligence and nuisance claims do not differ from the assessment claim. On its face, the Amended Counterclaim is unclear as to the scope of the claims. The court cannot resolve the coverage issue on this record before letting the facts unfold in the underlying case.

*Whether the Pratts have forfeited a defense or coverage*

The Pratts have a policy obligation to cooperate with Northern Security. Northern Security argues that the Pratts' refusal to agree to a reservation of rights and to Northern Security's selection of independent counsel breaches the policy and results in the forfeiture of any rights they have under it. To be fair, the Pratts objected to the reservation of rights *only* because Northern Security claimed the right to select independent counsel.

The Pratts have the right to reject Northern Security's reservation of rights. See 14 Couch on Ins. § 202:48 (explaining that "an insured is under no obligation to sign a nonwaiver agreement, and the insured's refusal does not permit the insurer to refuse to accept defense of a claim potentially within policy coverage"). If they did not have that right, the rule requiring their assent would be a pointless fiction. Cooperation clauses do not speak to that issue.

> The main purpose of a cooperation clause is to prevent collusion while making it possible for the insurer to make a proper investigation. In addition, the purpose of a cooperation clause is to enable the insurer to obtain relevant information concerning the loss while the information is fresh, to enable it to decide upon its obligations, and to protect itself from fraudulent and false claims. Accordingly, a cooperation clause requires honest cooperation and telling the truth.

14 Couch on Ins. § 199:4. Nothing in the record indicates any breaches of this nature.

Northern Security's argument that the refusal of independent counsel selected by Northern Security causes a forfeiture is predicated on Northern Security's view that it has a unilateral right to select independent counsel. Vermont case law is silent on who has this right in these circumstances, the parties disagree, and the matter is here for resolution. There is no prejudice and there is no forfeiture. "It has come to be well established in the law of insurance that forfeitures of policy contracts are not favored." *Francis v. London Guarantee & Accident Co.*, 100 Vt. 425, 430 (1927).

4

*The consequences of the Pratts' refusal to sign the bilateral non-waiver agreement*

The real dispute in this case, at this time, is whether the Pratts' refusal to sign the bilateral non-waiver agreement gives them or Northern Security the right to select independent counsel at Northern Security's expense. Neither the parties nor the court has found any explicit guidance in Vermont case law on this issue. To be clear, the Pratts continue to seek a defense from Northern Security, and Northern Security continues to offer to provide it.

A bedrock principle of insurance law in Vermont is this:

> Considerations of public policy require that [an insurer] shall deal with [its] [insured] with entire frankness. [It] may refuse to pay [a policy claim] and say nothing as to the basis of [its] refusal. In that case, all defenses to an action on the policy are available to [it]. [It] may refuse to pay on a particular ground reserving the right to defend on other grounds, with the same result. But, when [it] deliberately puts [its] refusal to pay on a specified ground, and says no more, [it] should not be allowed to "mend [its] hold" by asserting other defenses after the insured has taken [it] at his word and is attempting to enforce his liability.

*Cummings v. Connecticut General Life Ins. Co.*, 102 Vt. 351, 361–62 (1930). This is a prophylactic rule that applies regardless of any actual prejudice to the insured. *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 188 (1972). Thus, "when one defense is specified by an insurer as its reason for refusing to pay a loss, all others are waived." *Cummings*, 102 Vt. at 360. Similarly, when the insurer provides the insured a defense, with knowledge of its own defenses to liability but without reserving its rights to later assert them, it also waives them. *Beatty v. Employer's Liability Assurance Corp.*, 106 Vt. 25, 33 (1933).

The *Beatty* Court describes the options of an insurer in the circumstances Northern Security finds itself in as follows:

> The insurer may, if it is in doubt as to its liability, refuse to assume the defense, and await the result, thus leaving the insured free to defend or compromise in his own way through his own counsel; or it may obtain some *agreement* with the insured, under which, by proceeding to defend, it shall not be considered to have enlarged its obligation under the policy, thus reserving its rights under that instrument.

*Id*. at 34 (emphasis added). The requirement that the insured *agree* to a defense under a reservation of rights means that the insurer cannot unilaterally reserve its rights. *American Fidelity Co. v. Kerr*, 138 Vt. 359, 363 (1980). The insurer's "[c]ontrol of the defense," without the insured's assent to a reservation of rights, "constitutes an election to stand by the terms of the policy." *Id*.; see also 1 Insurance Claims and Disputes 5th § 2:18 ("An insurer cannot, if it agrees to satisfy its duty to defend, continue to reserve its right to deny coverage based on defenses that create a conflict of interest while at the same time retaining control of the insured's defense.").

5

These rules could create the impression that the insured is permitted to refuse a defense under a reservation of rights and thereby force the insurer into an impossible choice: either (a) defend and accept liability for claims that later turn out to lie beyond the scope of coverage; or (b) refuse to defend and risk liability for breaching the duty to defend and indemnify. One court has described the dilemma like this:

> Where the consent of the insured is a requirement for a defense under a reservation of rights the insured's refusal to give such consent places the insurer between Scylla and Charybdis. "By refusing to defend, the company loses all opportunity to contest the negligence of the insured or the injured person's right to recover, and exposes itself to a charge of and penalty for breach of contract. By defending, it incurs considerable expense and may waive [defenses]."

*Richmond v. Georgia Farm Bureau Mutual Ins. Co.*, 231 S.E.2d 245, 248 (Ga. Ct. App. 1976) (citation omitted). Fortunately, this dilemma has a solution.

The Vermont Supreme Court has ruled that an insurer in precisely this situation should file a declaratory judgment action to resolve the coverage dispute. *Farm Bureau Mutual Auto Ins. Co. v. Houle*, 118 Vt. 154, 158 (1954). The *Houle* decision did not, however, explain in any detail how the declaratory action fits with the other principles described above. Declaratory actions are the preferred mechanism for determining whether a duty to defend exists. Often, however, the court cannot resolve a coverage dispute prior to the completion of the underlying litigation because the exact nature of the underlying claim and loss is not known. In this case, for example, it will not be clear whether Greystone can succeed on an assessment claim, a negligence claim, or both, until the Chittenden case is resolved. In the meantime, however, the declaratory action, however, is available to take the place of the insured's assent to a reservation of rights. A judicial declaration that the insurer shall provide a defense without prejudice to either side with respect to coverage avoids any prejudice to the insured who would not accept the insurer's position when the defense was offered and preserves the insurer's defenses. *Fidelity & Casualty Co. of NY v. Envirodyne Engineers, Inc.*, 461 N.E.2d 471, 474–75 (Ill. Ct. App.1984). If the insured refuses a bilateral agreement, the insurer should give the insured a unilateral reservation and nonwaiver of rights, notice that it will file a declaratory action, and then it should file the declaratory action immediately. *Richmond*, 231 S.E.2d at 218–19. Northern Security has followed this course in this case.

### *Conflict between Northern Security and the Pratts*

The principal reason for the rules relating to reservations of rights and the waiver of defenses is to ensure that the insurer will inform the insured of any potential conflicts between them, enabling the insured to knowledgably determine how to proceed with the litigation with the third party and the coverage claim. "A conflict of interest naturally exists between an insurer and an insured and between the insurer's attorney who represents the insured and the insured himself or herself if defense of the insured is undertaken under reservation of rights." 14 Couch on Ins. § 202:18; see also *id*. § 202:54. Depending on the circumstances, the insurer may have less interest in vigorously defending a claim that will substantially exceed the policy limit; it may

6

have a strong interest in defending covered claims, but not an excluded claim; it may have an interest in steering liability toward non-covered claims and away from covered claims; or it may seek privileged information from the attorney to help exclude coverage.  Understanding the insurer's position on its defenses allows the insured to determine whether to accept a reservation of rights and accept the defense wholly and whether to hire private counsel to supplement the insurer-provided defense.

Northern Security argues that there is no conflict in this case because the issue of whether the Greystone property is vacant does not matter to the underlying litigation and the issue will not be resolved there.  This defense appears to be a "policy defense" with no bearing on the underlying litigation.  See 14 Couch on Ins. § 202:27 (distinguishing between policy defenses and coverage defenses).

However, under Vermont law, the lack of an insured's assent to a reservation of rights alone appears to be sufficient to require the insurer to relinquish control over the defense and appoint independent counsel.  The court does not need to rule so broadly.  If the issue of conflict matters, a classic one is present in this case.

> The most widely employed criterion appears to be whether the nature of the divergent interests is such that, under the facts of the dispute between insurer and insured, contrasted with the dispute between the insured and the third-party claimant, the insured's attorney would have an incentive to steer the facts of the latter litigation to a conclusion which would benefit the insurer by avoiding or minimizing coverage, while prejudicing the insured in some manner, usually by rendering it necessary for the insured to pay a judgment which the insurer might otherwise have been required to pay.

14 Couch on Ins. § 202:23.  This is precisely the risk presented by the underlying amended counterclaim.  It is unclear whether the negligence and nuisance claims, which potentially could find some coverage, entirely overlap with an excluded claim.  As the facts of the underlying case unfold, counsel representing the insurer's interests could develop an incentive to steer the case to the excluded claim.  Northern Security is aware of this conflict, and that it could harm its interests as well as the Pratts'.  See Letter from Robert Mello to John Franco (dated May 1, 2010) (noting that Northern Security would not hire *either* attorney involved with the coverage dispute).

Northern Security is required to release control over the defense and appoint independent counsel.

*Who has the right to select independent counsel?*

The question, then, is who has the right to select the independent counsel or, does "independent" necessarily mean selected by the insured.  The policy itself expressly states that Northern Security will "[p]rovide a defense at our expense *by counsel of our choice*."  The policy does not further specify that Northern Security will retain the right to select counsel when it defends under a reservation of rights or in the event of a conflict over coverage; it does not

address those issues at all.

Courts in different states have responded to this issue differently and their "views cannot be reconciled except to note that the holdings of the court are jurisdiction specific." 14 Couch on Ins. § 202:35. Generally, either the insured has the right to make the selection, with or without the insurer's approval, or the insurer has the right to make the selection, with or without the insured's approval. *Id*. The authors of one treatise identify 6 lines of authority when a conflict is present: (1) the insurer is relieved of the obligation to provide a defense altogether; (2) the insurer maintains the right to control the defense and select counsel; coverage can be litigated later without any estoppel effect from the underlying proceeding; (3) the insured selects counsel, but the insurer retains the right to control the litigation; (4) the insured selects counsel, who controls the litigation; (5) the insured selects counsel with insurer's approval; and (6) insurer hires independent counsel to control the defense or allows insured to select counsel to control the defense. 1 Insurance Claims and Disputes 5th § 4:22.

Many courts have given the *insured* the right to select independent counsel in these circumstances. See *Chi of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1117 (Alaska 1993). The reasoning in such cases is not particularly compelling: attorneys selected and paid by the insurer can never be truly independent because they have an unshakable interest in pleasing the insurer, either in the underlying case or to attract future business from the insurer.

The reasons to allow Northern Security to retain the right to select counsel are more persuasive. No provision of the policy would lead an insured to expect that it would have the right to select counsel of its choice. Rather, the policy, without exceptions, expressly grants Northern Security the right to select counsel. This right allows it to ensure that the insured is represented by experienced, skillful counsel who will not overbill or over-litigate, avoiding collateral disputes about the counsel selected and the reasonableness of the fees. The record of this case already contains evidence that Attorney Franco is charging a rate substantially in excess of that ordinarily paid by Vermont insurers, and that his fees already exceed the amount that Greystone originally sought from the Pratts. See Letter from Robert Mello to John Franco at 2 (dated May 1, 2010). As this case demonstrates, giving the insured the right to approve or reject the insurer's selection would create disputes between the insurer and the insured. The policy includes no such right.

Second, when the defemse counsel of the Pratts' choice is also involved in the coverage dispute, conflict between the insurer and the insured would create in the Pratts' selected counsel the same undesirable incentive to steer the underlying litigation that Northern Security is trying to avoid by releasing control over the litigation and appointing independent counsel. Allowing the Pratts to select Attorney Franco would not "balance" the parties' interests; it would unfairly tip the scale all the way to one side. As a general matter, regardless of who selects counsel, the insurer pays that counsel. It is not as though selection by the insured completely divorces the attorney from the insurer.

So long as control over the defense is released, the conflict is remedied once Northern Security appoints a truly independent counsel. If there was any question beforehand, the law of Vermont has been settled since 1933 that a lawyer appointed to represent an insured owes all

8

allegiances to the insured.

> That no man can serve two masters is as true to-day as it was when the words were first spoken. A lawyer, retained by an insurance company to defend a case on behalf of a policy holder, as long as he remains in the case, owes his complete and entire fidelity to the person whom he represents. He cannot substitute the interests of the insurer for those of the insured, and the company that employs him cannot be heard to claim that the insured is not prejudiced when he pursues [a] reprehensible a course of conduct.

*Beatty v. Employer's Liability Assurance Corp.*, 106 Vt. 25, 37 (1933). This is reinforced by the Rules of Professional Conduct and an advisory opinion of the Vermont Bar Association, addresses some of the issues involved with specificity. See Rules of Professional Conduct 1.2–1.10; http://www.vtbar.org/Upload% 20Files/WebPages/Attorney%20Resources/ aeopinions/Advisory%20Ethics%20Opinions/Disclosure/98-07.pdf. Nothing in the record suggests any systemic problem or abuse in Vermont that needs to be resolved by giving the selection right to insureds in these circumstances. In isolated cases, if the promise of independence proves illusory, the insured can sue the insurer for bad faith or negligence, sue the attorney for malpractice, and the insurer may find itself estopped from disclaiming coverage altogether.

The tripartite relationship among insurer, insured, and independent counsel may be unique in some respects, but it is not so fraught with danger as to reveal such attorneys, when selected by the insurer, as incapable of doing what attorneys of all kinds routinely do: identify potential conflicts, deal with them according to ethical obligations, and represent their clients zealously according to the clients' interests.

There is a need for independent counsel in this case, but the Pratts have cited no basis, much less a reasonable basis, for any fear that Northern Security will appoint counsel that is not independent or that is otherwise unlikely to represent them fully and ethically. Northern Security has the right to select and appoint independent counsel for the Pratts.

### Entitlement to attorney's fees already incurred

The Pratts have sought reimbursement of all attorney's fees incurred to defend against the underlying amended counterclaim. Northern Security seeks an order establishing that it is not liable for any such fees. The issue depends on whether Northern Security breached its duty to defend and the Pratts' incurred fees in the underlying litigation as a result. The parties do not address this issue in their statements of fact.

Under the policy, the Pratts had the post-loss duty to avoid voluntary payments, obligations, and other expenses, except at their own cost. The Pratts' voluntarily initiated the action in the Chittenden Civil Division and voluntarily began incurring legal expenses. At some point, they requested a defense from Northern Security. The record does not clearly establish whether Northern Security then offered to defend, or initially denied the obligation to defend and later changed course and offered to defend.

9

The general rule is that "an insurer is not responsible for defense costs incurred prior to the tender of a defense request." *Gopher Oil Co. v. American Hardware Mutual Ins. Co.*, 558 N.W.2d 756, 771 (Minn. Ct. App. 1999); *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 68 (Wis. 1996) (pre-tender expenses not compensable).

On this record, it is possible that Northern Security improperly refused to defend and the Pratts then incurred some fees in the period between the refusal to defend and the later offer to provide a defense. In the latter event, the Pratts would have a right to the fees incurred in the period between their request for a defense and Northern Security's offer of an attorney, though they would have the burden of proving the reasonableness of the fees claimed. See 14 Couch on Ins. § 205:76 ("Insureds and the lawyer seeking attorney's fees for the insurer's breach of its duty to defend have the burden of proving the reasonableness of hourly rates, given the character and complexity of the litigation, the attorney's experience and other qualifications, and the locale of the legal services."). It is also possible that the Pratts sought a defense, and a defense, though rejected by them, was offered in a reasonable time (no fees compensable).

## ORDER

For the foregoing reasons, Northern Security's motion for summary judgment is:

(1) denied on the issue of whether the lot is vacant;
(2) denied on the "loss assessment" issue;
(3) denied on the forfeiture issue;
(4) granted on the right to select independent counsel; and
(5) denied on the issue of reimbursement of already incurred fees.

With respect to issue 4, the court issues the following declaratory relief:

Northern Security shall appoint an independent attorney to defend the Pratts in the Chittenden lawsuit without prejudice to either side's claims and defenses with respect to insurance coverage.

Dated at Montpelier, Vermont this _____ day of May 2011.

_____
Geoffrey W. Crawford, Presiding Judge

10